**Cliffton Edward GEIGER,
Appellant–Defendant,**

v.

**STATE of Indiana, Appellee–Plaintiff.**

**No. 57A03–9809–CR–417.**

Court of Appeals of Indiana.

Dec. 28, 1999.

---

Susàn K. Carpenter, Public Defender of Indiana, Lorraine L. Rodts, Deputy Public Defender, Indianapolis, Indiana, Attorneys for Appellant.

Jeffrey A. Modisett, Attorney General of Indiana, Teresa Dashiell Giller, Deputy Attorney General, Indianapolis, Indiana, Attorneys for Appellee.

## OPINION

ROBB, Judge

Cliffton Edward Geiger was convicted after a trial by jury of bribery, a Class C felony, and official misconduct, a Class A misdemeanor. He was sentenced to four years for the bribery conviction and one year for the official misconduct conviction, the sentences to run concurrently. He now appeals his convictions. We reverse.

### Issues

Geiger raises four issues on appeal, which we restate as:

1. Whether the trial court properly instructed the jury regarding the element of intent;

2. Whether the trial court properly instructed the jury regarding the elements of the offense of bribery;

3. Whether the trial court properly excluded extrinsic impeachment evidence; and

4. Whether the trial court properly refused to allow Geiger to reveal the identity of an undercover police officer he was accused of exposing.

### Facts and Procedural History

Noble County Police Department detective Doug Harp received information that a fellow Noble County Police Department officer, Geiger, had been providing confidential information to the Luna family. Geiger was employed as the chief security officer at the Noble County Courthouse. The Lunas, Paul and Paul, Jr., were involved in marijuana trafficking. Harp approached Luna, Jr. with regard to becoming a confidential informant. Luna, Jr. declined at that time, although he told Harp that Geiger had approached his family about a loan and had offered the names of several confidential informants in exchange.

When Luna, Jr. was subsequently charged with criminal recklessness, he approached Harp and agreed to become a confidential informant against Geiger. Luna, Jr., at the courthouse for a hearing on his case, approached Geiger and indicated that someone was willing to loan him money in exchange for information on confidential informants, undercover vehicles and license plate numbers. Geiger then gave Luna, Jr. a piece of paper with names on it and told him a female police operative had infiltrated the Luna organization. The female operative was subsequently pulled from the investigation.

Luna, Jr. thereafter contacted Geiger by telephone and introduced an Allen County Police Department detective as "Mike Thomas," a drug dealer who was willing to loan him money. Geiger did not want to deal over the phone, so he proposed meeting at Sparta Lake. Luna, Jr. and "Thomas," who was equipped with an audio wire, drove to the lake in an undercover car. "Thomas" gave Geiger $120 and Geiger gave "Thomas" several names of confidential informants, makes and models of undercover vehicles, and other information.

After the meeting, Geiger ran a check on the license plate of the car "Thomas" had driven to the meeting and discovered that the car was an undercover police vehicle. He then called Luna, Jr. and informed him that "Thomas" was actually a police officer. Geiger also called "Thomas" and stated that he wanted to return the money he had taken. Geiger denied giving out any confidential police information. Because the investigation had been compromised, no further police activities were undertaken with regard to Geiger.

Geiger was charged with bribery, a Class C felony, and official misconduct, a Class A misdemeanor. A jury found him guilty as charged. He now appeals.

### Discussion and Decision

#### I. Propriety of Jury Instructions

##### A. Standard of Review

Geiger challenges the instructions given to the jury by the trial court. Jury instructions are within the discretion of the trial court and will only be reversed on a showing of abuse of that discretion. *Young v. State*, 696 N.E.2d 386, 389 (Ind. 1998).

##### B. Jury Instruction on Intent

Geiger contends that the trial court violated the right of fundamental due process guaranteed him by the Fourteenth Amendment by instructing the jury that "[t]he law presumes an individual intends the consequences of his act." R. 148. Geiger's contention is that this instruction improperly shifts from the State the burden of proving every element of the crime beyond a reasonable doubt and instead requires him to disprove intent. Intent is an element of both crimes of which Geiger

was convicted.[1] Geiger therefore claims that the instruction created a presumption in favor of an element of the crimes charged. We note that the record does not show that Geiger made any objection to the giving of this instruction. Ordinarily, failure to specifically object to a jury instruction results in waiver of that issue. Ind.Crim. Rule 8(B); *Brown v. State*, 691 N.E.2d 438, 444 (Ind.1998). Nevertheless, an error may not be subject to waiver if it is deemed "fundamental error." *Winegeart v. State*, 665 N.E.2d 893, 896 (Ind. 1996). To be deemed fundamental, the error must be a substantial blatant violation of basic principles that renders a trial unfair to a defendant. *Id.* Fundamental error must be so prejudicial to the rights of the defendant as to make a fair trial impossible. *Id.* Geiger contends that the instruction in question impermissibly shifted the burden of proof on the element of intent to him. This, he claims, is fundamental error.

The United States Supreme Court has held that the Fourteenth Amendment "protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." *In re Winship*, 397 U.S. 358, 364, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970). This "prohibits the State from using evidentiary presumptions in a jury charge that have the effect of relieving the State of its burden of persuasion beyond a reasonable doubt of every essential element of a crime." *Francis v. Franklin*, 471 U.S. 307, 313, 105 S.Ct. 1965, 85 L.Ed.2d 344 (1985). In *Sandstrom v. Montana*, 442 U.S. 510, 524, 99 S.Ct. 2450, 61 L.Ed.2d 39 (1979), the Supreme Court held that an instruction similar to the one at issue here did unconstitutionally shift the burden of proof to the defendant on the element of intent by creating a mandatory presumption. The instruction at issue in *Sandstrom* read, "[T]he law presumes that a person intends the ordinary consequences of his voluntary

acts." *Id.* at 512, 99 S.Ct. 2450. In *Francis*, the Court stated that to determine whether an instruction such as this is constitutional, a court must determine whether the challenged instruction creates a mandatory presumption or merely a permissive inference. 471 U.S. at 314, 105 S.Ct. 1965. The Court then explained:

A mandatory presumption instructs the jury that it must infer the presumed fact if the State proves certain predicate facts. A permissive inference suggests to the jury a possible conclusion to be drawn if the State proves predicate facts, but does not require the jury to draw that conclusion.

*Id.* (footnote omitted).

■ Geiger challenges the wording of Final Instruction No. 9, which reads, "Intent may be inferred from the voluntary commission of the prohibited act and from the facts and circumstances of the case. The law presumes an individual intends the consequences of his act." R. 148. The first sentence of this instruction uses the permissive phrase "may be inferred." Such language has been held to create a permissive inference. *Brown v. State*, 691 N.E.2d at 445 (citing *Winegeart*, 665 N.E.2d at 904). Therefore, this part of the instruction appears to be constitutionally sound.

■ However, the second sentence in Final Instruction No. 9 is substantially similar to the one held to be constitutionally infirm in *Sandstrom*. It uses no permissive language and directs the jury that they must presume intent if the State proves certain predicate facts. The *Francis* Court noted that, even if parts of an instruction are infirm, the jury charge taken as a whole may have explained the proper allocation of burdens with enough clarity that any infirm language could not have been understood by a reasonable juror to shift the burden of proof. 471 U.S. at 318–19, 105 S.Ct. 1965. However, general instructions as to the State's burden

---

**1.** *See* Ind.Code §§ 35–44–1–1(a)(2), 35–44–1– 2(2).

and the defendant's presumption of innocence are not enough to cure any infirmity in the challenged portion of the instruction. *Id.* at 319, 105 S.Ct. 1965 "Language that merely contradicts and does not explain a constitutionally infirm instruction will not suffice to absolve the infirmity." *Id.* at 322, 105 S.Ct. 1965.

■ The additional instructions given in the present case do not explain the constitutionally infirm language of Final Instruction No. 9. Here, there is not an explanation sufficient to absolve the infirmity of the mandatory presumption contained in Final Instruction No. 9. There are general instructions regarding Geiger's presumption of innocence[2] and the State's burden of proving each element beyond a reasonable doubt.[3] The jury was also instructed that the instructions were to be considered as a whole.[4] None of these general instructions are sufficient to explain the infirmity of the challenged language. The first sentence of Final Instruction No. 9 is likewise insufficient to cure any infirmity in the next sentence. The first sentence says that intent may be inferred from the "voluntary commission of the prohibited act and the circumstances of the case." R. 148. This does not explain the next sentence, which contains contradictory language that "[t]he law presumes an individual intends the consequences of his act." *Id.* Without sufficient explanation, the infirm language in Final Instruction No. 9 is not absolved. Therefore, we hold that this language did unconstitutionally shift the burden of proof on the element of intent from the State to Geiger and was therefore fundamental error necessitating a reversal of his convictions.

■ Having determined that the convictions must be reversed because of a fundamental error in instructing the jury,

we address an issue not raised by Geiger: whether the evidence was sufficient to support his convictions. We must address this issue in order to ensure that any retrial will not be barred by principles of double jeopardy. *See Bragg v. State*, 695 N.E.2d 179, 180 (Ind.Ct.App.1998).

■ Applying our well-established standard of review, in which we consider only the evidence and inferences favorable to the verdict and neither reweigh the evidence nor judge the credibility of the witnesses, *see Sanders v. State*, 704 N.E.2d 119, 123 (Ind.1999), we conclude that the evidence was sufficient to support the convictions.

■ Geiger was charged with bribery pursuant to Indiana Code section 35–44–1–1(a)(2). This statute states that "[a] person who ... being a public servant, solicits, accepts, or agrees to accept ... any property ... with intent to control the performance of an act related to his employment or function as a public servant...." Geiger was also charged with official misconduct pursuant to Indiana Code section 35–44–1–2(2), which states: "A public servant who ... performs an act he is not authorized by law to perform, with intent to obtain any property for himself ... commits official misconduct...." The evidence most favorable to the verdict is that Geiger accepted $120 from an individual he believed to be a drug dealer in exchange for the names of several police informants and the descriptions of several police undercover vehicles. Geiger also believed that the individual would loan him more money in exchange for more information at a later date. This is sufficient evidence to sustain his convictions. A retrial would not offend double jeopardy principles. Accordingly, we briefly address Geiger's remaining issues because of the possibility they might arise on retrial.

**2.** Preliminary Instruction No. 7, Final Instruction Nos. 12, 14.

**3.** Preliminary Instruction No. 8, Final Instruction Nos. 4, 12, 14.

**4.** Preliminary Instruction No. 3, Final Instruction No. 1.

### C. Jury Instruction on Elements of Bribery

Geiger contends that the trial court erred in instructing the jury on the elements that the State was required to prove beyond a reasonable doubt in order to gain a conviction for bribery. The information charging Geiger with bribery recited the general elements of bribery requiring proof that the defendant accepted *property* he was not authorized to accept. The information then more specifically stated:

> ... Geiger provided to an undercover officer posing as a civilian certain detailed information about law enforcement activities in and near Noble County, Indiana, and accepted *U.S. Currency* in exchange for that information....

R. 12 (emphasis added). The trial court read the information in its entirety to the jury as part of its final instructions. R. 139. The trial court also instructed the jury as follows:

> To convict the Defendant the state must prove each of the following elements: The Defendant
>
> 1. was a public servant, as defined in these instructions, and
>
> 2. solicited, accepted or agreed to accept either before or after becoming appointed, elected or qualified
>
> 3. *any property*, except property he or she was authorized by law to accept
>
> 4. with intent to control the performance of an act related to defendant's employment or function as a public servant.

R. 141 (emphasis added). "Property" was defined in a later instruction as "anything of value," including "[a] gain or advantage or anything that might reasonably be regarded as such by the beneficiary; [r]eal property, personal property, money, labor, and services; [or][e]xtension of credit." R. 146. Geiger contends that the trial court erred in instructing the jury on the general element of bribery, that is that he accepted *any property*, rather than restricting the jury to proof of the more specific allegation that he accepted U.S. Currency.

The record reflects that Geiger did not object to this instruction, and thus, any error in the instruction is waived. Moreover, we do not find the instruction to be erroneous. As previously stated, instructing the jury is solely within the discretion of the trial court, and we will reverse only upon a showing of abuse of that discretion. *Young,* 696 N.E.2d at 389. There is no abuse of discretion where the instructions, considered as a whole and in reference to each other, do not mislead the jury as to the applicable law. *Id.* When the instructions regarding the charge against Geiger and the elements of the crime are considered together, the jury was adequately instructed that the "property" which Geiger was accused of accepting and which the State must prove that he did in fact accept, was money. There was no abuse of discretion in instructing the jury.

### II. Exclusion of Impeachment Evidence

The State presented the testimony of Sheriff Douglas Dukes in its case-in-chief. Sheriff Dukes testified that in 1983, he had bought two guns at the garage sale of his uncle's friend without filling out a handgun transaction form. He later discovered the guns to be stolen and alerted the appropriate people and turned the guns over. On cross-examination, Dukes testified that he did not know whether his uncle had a criminal record and admitted that he discovered the guns were stolen in September but did not initiate an investigation or return the guns until April. Geiger then sought to introduce into evidence certain documents from the internal investigation of this incident in which the investigator concluded that Sheriff Dukes knew that his uncle was a convicted felon and demonstrated "clouded" judgment in failing to act promptly. R. 895. The State objected because the document was not relevant, contained opinions, and was prejudicial.

The trial court sustained the State's objection.

■■■■■ A claim of error in the admission or exclusion of evidence will not prevail on appeal "unless a substantial right of the party is affected." Ind. Evidence Rule 103(a). The standard of review for such claims is abuse of discretion. *Gant v. State*, 694 N.E.2d 1125, 1129 (Ind.1998).

■■■ The trial court did not abuse its discretion in excluding the internal investigation report from evidence. Sheriff Dukes testified that in 1983, thirteen years prior to the incidents in question here, he had come into possession of stolen guns at a garage sale about which his uncle had told him. He further testified that he kept the guns in his possession for approximately eight months after learning they might be stolen, and approximately three months after confirming that fact. Whether or not he knew that his uncle had a criminal record and whether or not the investigator believed his actions belied "clouded" judgment has no bearing on the determination of whether Geiger committed the crime alleged herein. Even if Sheriff Dukes' actions were relevant to this case, the jury could determine for itself based upon Sheriff Duke's prior testimony whether or not he had exercised "clouded" judgment in his handling of the matter and whether or not his professed lack of knowledge of his uncle's criminal record was a credible denial. The trial court did not err in excluding this evidence.

### III. Limiting Cross–Examination

The State presented the testimony of Detective Mark Farren, who had been with a drug task force during the time of Geiger's alleged criminal activity. Detective Farren was involved in the Luna investigation and knew of the female operative who had infiltrated the organization and who subsequently was pulled from the investigation after Geiger told Luna, Jr. about her. During Geiger's cross-examination of Detective Farren, he asked the name of the officer who was working undercover from within the Luna organization. The State objected to the relevance of the officer's name: "[W]e can't be lettin' out that this [sic] confidential information like that. We've taken great pains to protect identities of, of that informant or the undercover officer. It's not relevant to this case." R. 638. The trial court sustained the objection. Geiger also asked Detective Farren how the operative had infiltrated the organization. Again, the State's objection to relevancy was sustained. R. 638–39. Geiger contends that the trial court rulings "prevented him from effectively defending against the State's accusations [and] depriv[ed] him of his Sixth and Fourteenth Amendment rights to confrontation, compulsory process, and fundamental fairness." Brief of Appellant at 23.

■■■ The right to confront witnesses granted by our Federal and State Constitution includes the right of full, adequate and effective cross-examination, which is fundamental and essential to a fair trial. *Andrews v. State*, 588 N.E.2d 1298, 1302 (Ind.Ct.App.1992). A trial court is allowed to control the conduct of cross-examination, and only a clear abuse of discretion will permit a reversal. *Id.* An abuse of discretion is shown when the restriction relates to a matter which substantially affects the defendant's rights. *Id.* A defendant objecting to restriction placed on the scope of cross-examination must demonstrate how he was prejudiced by the trial court's action. *Id.* As a general policy, disclosure of a confidential informant or operative's name is prevented unless the defendant can show that disclosure is relevant and helpful to the defense or is necessary to fair trial. *Davenport v. State*, 464 N.E.2d 1302 (Ind.1984), *cert. denied*, 469 U.S. 1043, 105 S.Ct. 529, 83 L.Ed.2d 416 (1984).

■■■ Geiger has not met his burden of showing the relevance or necessity of the information he claims it was erroneous to exclude. The apparent point of the State

calling Detective Farren as a witness was to illustrate the effect Geiger's conduct had on police investigations. We fail to see how the identity of the operative was necessary to Geiger's defense. She never provided any information about Geiger and it is reasonable to assume that she did not know of Geiger or his alleged misconduct at least until after she was pulled from the investigation. There was no abuse of discretion in sustaining the State's objection to Geiger's question concerning the identity of the undercover operative.

### Conclusion

The trial court committed fundamental error in instructing the jury on a mandatory presumption in the State's favor with respect to intent. Thus, his convictions are reversed.

Reversed.

FRIEDLANDER, J., and RILEY, J., concur.