**Cleveland WALKER, Jr., Appellant–Defendant,**

v.

**STATE of Indiana, Appellee–Plaintiff.**

**No. 45A05–0105–PC–228.**

Court of Appeals of Indiana.

June 12, 2002.

Susan K. Carpenter, Public Defender of Indiana, Hope Fey, Deputy Public Defender, Attorneys for Appellant.

Steve Carter, Attorney General of Indiana, Richard C. Webster, Deputy Attorney General, Indianapolis, Indiana, Attorneys for Appellee.

## OPINION

DARDEN, Judge.

*STATEMENT OF THE CASE*

Cleveland Walker Jr. ("Walker") appeals the post-conviction court's denial of his petition for post-conviction relief.

We reverse and remand with instructions.

## ISSUES

1. Whether the post-conviction court erred in finding that Final Instruction Number 13 was properly tendered to the jury.

2. Whether Walker's trial counsel provided effective assistance of counsel.

3. Whether Walker's appellate counsel provided effective assistance of counsel.

## FACTS

This incident occurred at Victory Arms Apartment in Gary, Indiana, where Walker was a resident. On the night of April 22, 1991, Jose Moore was working the midnight shift as a security guard at the apartment complex. This complex was plagued with significant problems related to the sale of illegal drugs. In fact, Walker was scheduled to be evicted from the complex at 7:00 a.m. that morning for allegedly selling drugs. At approximately 3:00 a.m., Robin Hardeway, a close friend of the Moore family, brought Moore some food and a glucometer for his diabetes. While they were inside the security booth, Walker and Michael Wrencher approached them. Wrencher asked Hardeway for a cigarette, and she broke off half of hers and gave it to him. At that point, Walker stepped back, handed a gun to Wrencher, and began to smile. Wrencher proceeded to place the gun inside Hardeway's jacket and fired two or three shots. He then shot Moore approximately six or seven times, and then fired the last three shots through the counter of the booth, hitting Hardeway. Walker and Wrencher then fled the scene, stating "we did it good" or "we took them down". (R. 404–05). While

Moore survived the shooting, Hardeway died as a result of her injuries.

On October 23, 1991, Walker was charged with murder and attempted murder, both class A felonies.[1] After a jury trial Walker was found guilty on both counts, and he was subsequently sentenced to the Department of Corrections for consecutive terms of forty years for murder and thirty years for attempted murder.

*Walker v. State,* No. 45A03–9303–CR–95, slip op. at 2–3, 635 N.E.2d 1162 (Ind.Ct. App. June 9, 1994).

After this court affirmed Walker's convictions, Walker filed a pro-se petition for post-conviction relief on May 3, 2000. On May 30, 2000, attorney Hope Fey entered her appearance on behalf of Walker. The State filed its answer on June 20, 2000 in which it asserted the affirmative defense of laches. On December 13, 2000, Walker amended his petition asserting that the trial court "gave fundamentally flawed jury instructions that created a mandatory presumption, shifted the burden of proof, and permitted his conviction on fewer than all essential elements of the charged crimes." (App. p. 41). In its amended answer filed on December 28, 2000, the State countered that Walker had waived his amended claim because "it was known and available on direct appeal, but not raised." (App. p. 45).

The post-conviction court held a hearing on January 9, 2001. During the hearing, Daniel Toomey ("Toomey"), Walker's trial counsel, responded to Walker's assertion that he was ineffective for failing to tender an alibi instruction or object to Final Instruction Number 13. Toomey testified that he pursued alternate theories of defense: (1) alibi; and (2) an insufficiency of evidence defense, asserting that Walker

---

1. *See* Ind.Code §§ 35–42–1–1 and 35–41–5–1.

did not have the specific intent to aid Wrencher. Toomey stated, "I relied upon the jury not finding that Mr. Walker was not present; however, if they did find that he was present, then like a fallback defense would be that he didn't have any intent." (PCR Tr. p. 38). Toomey also testified that when he pursued an alibi defense he normally would tender an alibi instruction. However, he could not think of a reason why an alibi instruction was not tendered in this case. In addition, during the trial, Moore stated that (1) he was good friends with Walker prior to the shooting; (2) when he saw Wrencher, Walker was with him approximately "eighty percent of the time;" and (3) he saw Walker hand the gun to Wrencher prior to being shot. (Trial Tr. p. 334).

Likewise, Charles Stewart ("Stewart"), Walker's appellate counsel, responded to assertions that he was ineffective for not raising on direct appeal the alleged errors surrounding Final Instruction Number 13. Stewart testified that he "saw nothing there that warranted raising that as an issue." (PCR Tr. p. 47). Following the hearing, the post-conviction court took the matter under advisement.

On April 9, 2001, the post-conviction court denied Walker's petition.

## DECISION

 A petitioner for post-conviction relief bears the burden of proving by a preponderance of the evidence that he or she is entitled to relief. *Moody v. State,* 749 N.E.2d 65 (Ind.Ct.App.2001). "On appeal from the denial of a petition for post-conviction relief, we neither reweigh the evidence nor judge the credibility of the witness." *Id.* at 67. In order to prevail on appeal, the petitioner must show that the evidence is without conflict and leads unerringly and unmistakably to a conclusion opposite that reached by the post-convic-

tion court. *Id.* "It is only where the evidence is without conflict and leads to but one conclusion, and the post-conviction court has reached the opposite conclusion, that the decision will be disturbed as being contrary to law." *Id.*

### 1. *Jury Instruction*

During trial, Final Instruction Number 13 was tendered to the jury as follows:

It is a fundamental principle of law that where two or more persons engage in the commission of an unlawful act, each person is criminally responsible for the actions of each other person which were a probable and natural consequence of their common plan even though not intended as part of the original plan. It is not essential that participation of any person to each element of the crime be established.

Under Indiana Law, "A person who knowingly or intentionally aids, induces, or causes another person to commit an offense commits that offense, even if the other person:

1. has not been prosecuted for the offense;

2. has not been convicted of the offense; or

3. has been acquitted of the offense."

To aid under the law is to knowingly aid, support, help or assist in the commission of a crime. Mere presence at the scene of the crime and knowledge that a crime is being committed are not sufficient to allow an inference of participation. It is being present at the time and place, and knowingly doing some act to render aid to the actual perpetrator of the crime.

The presence of a person at the scene of the commission of a crime and companionship with another person engaged in the commission of the crime and a course of conduct before and after the

offense are circumstances which may be considered in determining whether such person aided and abetted the commission of such crime.

(App. p. 65). Walker did not object to this instruction.

In his brief, Walker argues that the post-conviction court erroneously found that Final Instruction Number 13 was a correct statement of the law on accomplice liability. Specifically, Walker argues that Final Instruction Number 13(1) created a mandatory presumption that improperly shifted the burden of proof from the State to him; (2) misled the jury concerning the elements of the crimes charged that the State had to prove beyond a reasonable doubt; and (3) failed to include the element requiring specific intent. In response, the State asserted that Walker has waived this claim because he failed to object at trial or raise it on direct appeal. In his reply brief, Walker further argues that the state cannot raise the affirmative defense of waiver because it did not raise it during the post-conviction hearing. We disagree with Walker, believing that the State may raise the affirmative defense of waiver on appeal, in this case.

■ "Waiver is an affirmative defense to a petition for post-conviction relief. The State therefore must present a waiver claim before a court can find waiver." *Mickens v. State,* 596 N.E.2d 1379, 1381 (Ind.1992). However, "[i]n a post-conviction proceeding, the State may raise the affirmative defense of laches, which acts as a legitimate waiver of the petitioner's right to challenge a judgment." *Lile v. State,* 671 N.E.2d 1190, 1194 (Ind.Ct.App.1996). To succeed, the State must prove by a preponderance of the evidence that the petitioner unreasonably delayed in seeking relief and that the State was prejudiced by the delay. *Id.*

In this case, the State initially indicated that it was going to assert the affirmative defense of laches in its answer to Walker's petition for post-conviction relief. Subsequently, the State asserted the additional affirmative defense of waiver in its amended answer to Walker's amended petition for post-conviction relief. Furthermore, during the post-conviction hearing, the State pursued the affirmative defense of laches. The post-conviction court found that Walker had "delayed in the filing of his petition for post-conviction relief for a period of almost six years." (App. p. 85). However, when the post-conviction court denied Walker's petition, it also found that his petition was not barred by laches, because the State "failed to establish that it was prejudiced by the petitioner's unreasonable delay." (App. p. 85).

■ We have previously held that "[w]hen a post-conviction court does not find waiver and denies the petition on other grounds, if the petitioner appeals the State can argue waiver in its appellee's brief without filing a cross-appeal on the issue." *Mickens,* 596 N.E.2d at 1381. As a result, the State was free to raise waiver in their appellee brief to this court.

■ In this case, the record shows that counsel for Walker did not object to Final Instruction Number 13 during his trial. Walker has presented no evidence demonstrating that this issue was not known or available at trial. However, this court has held that except for "ineffective assistance of counsel, which may be raised either on direct appeal or in post-conviction proceedings, ..., [i]f an issue was known and available but not raised on appeal, it is waived." *Benefiel v. State,* 716 N.E.2d 906, 911 (Ind.1999) (citation omitted). Therefore, because Walker argues that Final Instruction Number 13 was erroneous as part of his ineffective assistance claim, we find he has not waived this issue.

██ Specifically, Walker argues that the following language within the instruction creates a mandatory presumption shifting the burden of proof to him regarding his intent:

> It is a *fundamental principle* of law that ... each person *is* criminally responsible for the actions of each other person which were a probable and natural consequence of their common plan even though not intended as part of the original plan.

(App. p. 144) (emphasis added). Walker argues that this instruction "would doubtlessly have convinced reasonable jurors that they were required to presume the accused nonshooter (Walker) had the same intent as the shooter (Wrencher) unless Walker persuaded them otherwise." Br. of Appellant at 11.

 "Jury instructions are within the discretion of the trial court and will only be reversed on a showing of abuse of that discretion." *Geiger v. State*, 721 N.E.2d 891, 894 (Ind.Ct.App.1999). "The purpose of the instructions is to inform the jury of the law applicable to the facts of the particular case. To be erroneous, instructions must either as a whole misstate the law or otherwise mislead the jury." *Clark v. State*, 732 N.E.2d 1225, 1230 (Ind. Ct.App.2000). On appeal, we presume that the jury followed the instructions of the trial court. *Pruitt v. State*, 622 N.E.2d 469 (Ind.1993).

██ The Fourteenth Amendment requires the State to prove every material element of a criminal offense beyond a reasonable doubt, and a jury instruction that shifts the State's burden to the defendant is a Due Process violation. *Sandstrom v. Montana*, 442 U.S. 510, 99 S.Ct. 2450, 61 L.Ed.2d 39 (1979). This constitutional principle "protects the 'fundamental value determination of our society,' given voice in Justice Harlan's concurrence in *Winship*, that 'it is far worse to convict an innocent man than to let a guilty man go free.'" *Francis v. Franklin*, 471 U.S. 307, 313, 105 S.Ct. 1965, 1970, 85 L.Ed.2d 344 (1985) (quoting *In re Winship*, 397 U.S. 358, 372, 90 S.Ct. 1068, 1077, 25 L.Ed.2d 368 (1970)).

██ Our threshold inquiry is to determine the nature of the presumption created by the challenged jury instruction. *Sandstrom*, 442 U.S. at 514, 99 S.Ct. 2450. "That determination requires careful attention to the words actually spoken to the jury, ..., for whether a defendant has been accorded his constitutional rights depends upon the way in which a reasonable juror could have interpreted the instruction." *Id.* at 514, 99 S.Ct. 2450.

 To determine whether the instant instruction is unconstitutional we must determine whether it creates a mandatory presumption or merely a permissive presumption.

> A mandatory presumption instructs the jury that it must infer the presumed fact if the State proves certain predicate facts. A permissive inference suggests to the jury a possible conclusion to be drawn if the State proves predicate facts, but does not require the jury to draw that conclusion.

*Francis*, 471 U.S. at 314, 105 S.Ct. 1965; *Geiger*, 721 N.E.2d at 895. If a portion of the jury instruction, considered in isolation, could reasonably have been understood as creating a mandatory presumption, "the potentially offending words must be considered in the context of the [instructions] as a whole. Other instructions might explain the particular infirm language to the extent that a reasonable juror could not have considered the [instruction] to have created an unconstitutional presumption." *Francis*, 471 U.S. at 315, 105 S.Ct. 1965.

In *Sandstrom*, the U.S. Supreme Court considered the following instruction: "[T]he law presumes that a person intends the ordinary consequences of his voluntary acts." 442 U.S. at 515, 99 S.Ct. 2450. In that case, the defendant had confessed to killing the victim, but asserted at trial that "he did not do so 'purposely or knowingly,' . . . ." *Id.* at 513, 99 S.Ct. 2450. Over the defendant's objection, the instruction was submitted to the jury. The defendant was convicted.

The Court found that the instruction created a mandatory presumption that the defendant intended to kill the victim. "Given the common definition of 'presume' as 'to suppose to be true without proof,' Webster's New Collegiate Dictionary 911 (1974), and given the lack of qualifying instructions as to the legal effect of the presumption," the Court found that a reasonable juror may have interpreted the instruction as being conclusive. *Id.* at 517, 99 S.Ct. 2450. The jurors "were not told that they had a choice, or that they might infer that conclusion; they were told only that the law presumed it. It is clear that a reasonable juror could easily have viewed such an instruction as mandatory." *Id.* Therefore, the Court held that this instruction unconstitutionally shifted the burden of proof to the defendant that he lacked the required intent. *Id.*

In *Francis*, the U.S. Supreme Court considered another offending instruction as follows:

> The acts of a person of sound mind and discretion are presumed to be the product of the person's will, but the presumption may be rebutted. A person of sound mind and discretion is presumed to intend the natural and probable consequences of his acts but the presumption may be rebutted.

471 U.S. at 311, 105 S.Ct. 1965. In that case, the defendant, after escaping from the custody of prison officials, approached a house and, at gunpoint, attempted to steal the homeowner's car keys. When the homeowner slammed the door shut, the defendant's gun discharged. The bullet traveled through the door and into the homeowner's chest, killing him. At his trial, the defendant asserted that he did not intentionally kill the homeowner; "[h]e claimed that the shots were fired in accidental response to the slamming of the door." *Id.* at 311, 105 S.Ct. 1965. The aforementioned instruction was submitted to the jury. After about an hour of deliberation, the jury "returned to the courtroom and requested reinstruction on the element of intent and the definition of accident." *Id.* at 312, 105 S.Ct. 1965. After receiving reinstruction, the jury deliberated 10 more minutes and returned with a verdict of guilty.

On appeal, the U.S. Supreme Court noted that the Georgia Supreme Court had interpreted the language of the instruction as creating a permissive inference. However, the U.S. Supreme Court held that the question is not what the State supreme court declares the meaning of the instruction to be, but "what a reasonable juror could have understood the [instruction] as meaning." *Id.* at 315–16, 105 S.Ct. 1965. The Court found that the sentences were "cast in the language of command." *Id.* The jury was not told it had a choice, but that it must presume the defendant's intent upon proof of the other elements of the offense. *Id.* Further, even the fact that the presumption was rebuttable did not make the instruction any less infirm. "A mandatory rebuttable presumption does not remove the presumed element from the case if the State proves the predicate facts, but it nonetheless relieves the State of the affirmative burden of persuasion on the presumed element by instructing the jury that it must find the presumed

element unless the defendant persuades the jury not to make such a finding." *Id.* at 317, 105 S.Ct. 1965.

Likewise, the Indiana Court of Appeals has also considered the following similar instruction: "Intent may be inferred from the voluntary commission of the prohibited act and from the facts and circumstances of the case. The law presumes an individual intends the consequences of his act." *Geiger,* 721 N.E.2d at 895. In that case, the defendant was convicted of bribery and official misconduct. At trial, the defendant did not object to the instruction and the jury found him guilty.

Applying the U.S. Supreme Court's analysis in *Sandstrom* and *Francis,* we found that the instruction used no permissive language and directed the jury "that they must *presume* intent if the State proves certain predicate facts." *Geiger,* 721 N.E.2d at 895 (emphasis added). We noted that even if this instruction was infirm, we must consider the charge as a whole. *Id.* "However, citing *Francis,* we found that general instructions as to the State's burden and the defendant's presumption of innocence are not enough to cure any infirmity in the challenged portion of the instruction." *Id.* at 896. Contradictory language that does not explain a constitutionally infirm instruction is not sufficient to eliminate the infirmity. *Id.*

Applying the analysis from the preceding line of cases to the facts of the instant case, we find that a reasonable juror could have understood Final Instruction Number 13 as a mandatory presumption that shifted to Walker the burden of proving his intent to commit the crimes charged when he handed the gun to Wrencher. Final Instruction Number 13 specifically states that it is a *"fundamental principle* of law that ... each person *is* criminally responsible for the actions of each other person which were the probable and natural con-

sequences of their common plan...." (App. p. 144) (emphasis added). Webster's Third New International Dictionary 921 (3d ed.1976) defines the word "fundamental" as being the original or generating source; "the one from which others are derived." The same dictionary defines the word "principle" as being "a general or fundamental truth; a comprehensive and fundamental law, doctrine, or assumption on which others are based or from which others are derived." *Id.* at 1803. Therefore, it is clear that whatever concept the phrase "fundamental principle" denotes or describes must be of such importance that a reasonable person could assume its status as such. As a result, we find that the phrase creates a presumption.

We now must determine whether this presumption is mandatory or permissive. Again, Final Instruction Number 13 specifically stated that "[i]t is a *fundamental principle* of law that ... each person *is* criminally responsible...." (App. p. 144) (emphasis added). Here, the use of the word "is" indicates a mandate for the jury to presume Walker's intent. As the Supreme Court stated in *Francis,* the instruction is "cast in the language of command." 471 U.S. at 316, 105 S.Ct. 1965. The jurors "were not told that they had a choice, or that they might infer that conclusion; they were told only that [it is a fundamental principle of law that ... each person is criminally responsible]. It is clear that a reasonable juror could easily have viewed [Final Instruction Number 13] as mandatory." *Id.* Further, considering the instructions as a whole, the jury was not given any other instructions explaining the infirmity contained in Final Instruction Number 13.

 When dealing with appeals challenging that a jury instruction creates a mandatory presumption, it might be tempting to carve out an exception regard-

ing whether Walker placed his intent at issue during trial. An exception was created by the Indiana Supreme Court concerning jury instructions addressing the specific intent to kill when a defendant is charged with attempted murder. The court held that "in cases on direct appeal where intent is not in issue, instructions which fail to advise the jury that specific intent to kill is required to convict a defendant of attempted murder do not necessarily constitute fundamental error." *Swallows v. State*, 674 N.E.2d 1317, 1318 (Ind. 1996); *see also Sanders v. State*, 764 N.E.2d 705 (Ind.Ct.App.2002). However, we cannot do so here, because, under the facts and circumstances of this case, we believe that Walker's intent to commit the crimes charged was always an issue. Furthermore, it is the duty of the trial court to submit instructions that do not confuse or mislead a jury. *Dill v. State*, 741 N.E.2d 1230, 1232 (Ind.2001) ("The trial court should refuse ambiguous and confusing instructions."). In addition, it is the law of this state that (1) a defendant is presumed to be innocent; (2) the State bears the burden of proving the defendant guilty beyond a reasonable doubt; and (3) a defendant does not have to prove his innocence or explain anything, except in very limited situations, i.e. when establishing the defense of insanity. U.S. CONST. amend. V; IND. CONST. art 1 § 13; Ind. Code § 35–41–4–1; *see also Robey v. State*, 454 N.E.2d 1221 (Ind.1983) (agreeing with instruction that stated defendant is presumed innocent, State has burden of proof, and defendant does not have to prove his innocence).

As a result, we find that Final Instruction Number 13 creates a mandatory presumption violating Walker's due process rights under the Fourteenth Amendment. Because the jurors were instructed to presume the accused non-shooter (Walker) had the same intent as the shooter (Wrencher), we must reverse Walker's convictions for both murder and attempted murder. Therefore, we reverse the post-conviction trial court, grant Walker's petition for post-conviction relief, and remand to the original trial court for a new trial.

Reversed and remanded.[2]

MATHIAS, J., and VAIDIK, J., concur.

---

**2.** Because we have reversed Walker's convictions, we need not reach his claims of ineffective assistance of counsel.