## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



ATTORNEYS FOR APPELLANT

Stephen T. Owens
Kathleen Cleary
John Pinnow
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Gregory F. Zoeller
Attorney General of Indiana

James B. Martin
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Judy Kirby,

*Appellant-Petitioner,*

v.

State of Indiana,

*Appellee-Respondent.*

December 10, 2015

Court of Appeals Case No.
55A01-1503-PC-85

Appeal from the Morgan Superior Court

The Honorable Jane Spencer Craney, Judge

Cause No. 55D03-1210-PC-1505

**Riley, Judge.**

## STATEMENT OF THE CASE

Appellant-Petitioner, Judy Kirby (Kirby), appeals the post-conviction court's denial of her petition for post-conviction relief.

We affirm.

## ISSUES

Kirby raises two issues on appeal, which we restate as:

(1) Whether she received ineffective assistance of trial counsel; and

(2) Whether she received ineffective assistance of appellate counsel.

## FACTS AND PROCEDURAL HISTORY

The facts, as set forth in Kirby's direct appeal, *Kirby v. State*, 774 N.E.2d 523, 529-30 (Ind. Ct. App. 2002), *reh'g denied, trans, denied*, are presented as follows:

> For some time prior to March 25, 2000, Kirby was under stress because of her relationship with Tinnie [Kirby] [Kirby's boyfriend] and her concern about losing him and her children. Kirby was also concerned about getting into trouble with the police because of her involvement with drugs. As a result of this stress, Kirby exhibited many bizarre behaviors, such as wearing disguises, placing cameras in trees, reporting that people were watching and following her, and expressing thoughts of suicide. On March 2, 2000, Kirby was involuntarily committed to the psychiatric unit at St. Francis Hospital. There, Kirby was diagnosed with Psychosis and given Risperdol, an anti-psychotic drug. Kirby was also diagnosed with hyperthyroidism. On March 4, 2000, Kirby's mental condition had improved to the point where she was no longer seen as an immediate danger to herself or others and, thus, she was released from St. Francis Hospital.

On March 25, 2000, Kirby, three of her eight children, and her nephew, J.Y., (collectively, the Children) left the Greenwood residence of Jeanetta Scott, Kirby's sister, and drove to a car wash and then to a McDonald's for soft drinks. Scott was worried about Kirby's condition and followed Kirby in her own car. When Kirby left McDonald's, she passed Scott's car and then came to a complete stop in the roadway. Scott went around Kirby's stopped car and turned around at the first side street available. However, Scott lost sight of Kirby because Kirby drove away after Scott had passed her.

Subsequently, Kirby stopped her car at a stop sign near Sarah Mullis's driveway and remained there for approximately two minutes as other motorists drove around her. Mullis approached Kirby's car and asked if Kirby needed to use her telephone. After Kirby indicated that she did need to use the telephone, Mullis went into her house, got a cordless telephone, and gave it to Kirby. Kirby drove away with the phone, and Mullis called 9-1-1. However, when Mullis looked out a window, she saw Kirby's car sitting in front of her garage. Mullis went outside and retrieved the telephone. Kirby sat in her car in Mullis's driveway staring straight ahead for approximately five minutes and then drove off.

Kirby then showed up uninvited at a baby shower at State Road 67 and High School Road. Kirby exclaimed to everyone at the shower that she was looking for a birthday party because it was her son's birthday. Kirby and the Children stayed at the baby shower for approximately fifteen to twenty minutes and then left in Kirby's car.

At approximately 4:11 p.m., Kirby arrived at a gas station on State Road 67 in Martinsville, Indiana, where she purchased gas and candy. Shortly before 5:00 p.m., Kirby left the gas station and drove her car the wrong way, entering an exit ramp from State Road 67. Kirby accelerated as she drove the wrong way on the exit ramp. Kirby traveled northbound in the southbound lanes of State Road 67. Nine motorists had to take evasive action, such as driving away from the lane in which Kirby was speeding the wrong way, to avoid colliding with Kirby's car. One motorist had continually blown her horn to alert Kirby to the danger. Several motorists testified that Kirby had made no effort to evade oncoming traffic. In addition, Kirby passed six "wrong way" traffic signs and ten "do not enter" signs, which were posted along the roadway and visible to motorists. There was also an emergency lane available to Kirby for getting out of the way of

oncoming traffic. Eventually, Kirby's car clipped the back of another car and then collided with a van, causing the van to vault into the air and then land on its side. Kirby's car was traveling over ninety miles per hour when it struck the van. A later investigation of Kirby's car indicated that her brake lights were not "on" at the time of impact.

The van's passengers included Tom Reel, his son, Bradley Reel, and his daughter, Jessica Reel (collectively, the Reels), and Bradley's friend, Richard Miller. The Children and the Reels all died at the scene of the collision. Miller was injured and suffered permanent impairment of his back and right foot. Kirby was thrown from her car and suffered a closed head injury and various orthopedic injuries.

On April 14, 2000, the State charged Kirby with seven counts of murder as felonies, four counts of neglect of a dependent resulting in serious bodily injury as class B felonies, and one count of aggravated battery as a class B felony. . . .

The trial court conducted a jury trial, and the jury found Kirby guilty as charged. At sentencing, the trial court merged the four convictions of neglect of a dependent resulting in serious bodily injury as class B felonies into the murder convictions of the Children. The trial court then sentenced Kirby to sixty-five years each for the three murders of the Reels, fifty-five years each for the four murders of the Children, and twenty years for the aggravated battery of Miller. Further, the trial court ordered that the sentences for the murders of the Reels be served consecutively to each other and to the sentence for the aggravated battery of Miller. The trial court ordered that the sentences for the murders of the Children be served concurrently to each other and to all other sentences. Thus, the trial court sentenced Kirby to an aggregate two hundred and fifteen year term of incarceration.

[5] Kirby appealed. On appeal, she presented this court with six issues of reversible error. She disputed the trial court's denial of her motion to dismiss pursuant to Ind. Criminal Rule 4(B); the admission of prior bad act evidence pursuant to Ind. Evidence Rule 404(b); the denial of two motions for mistrial predicated upon prosecutorial misconduct; the failure to give a circumstantial evidence instruction; the presence of two officers in the courtroom despite a separation of

witnesses order; and the appropriateness of her sentence. We affirmed the trial court. *See Kirby*, 774 N.E.2d at 540. On January 2, 2003, our supreme court denied transfer.

[6] On October 19, 2012, Kirby filed a *pro se* petition for post-conviction relief and, subsequently, an amended petition, through counsel, on December 12, 2013. On October 30, 2014, the post-conviction court conducted an evidentiary hearing. Thereafter, on February 18, 2015, the post-conviction court issued its findings of fact, conclusions, and order, denying Kirby's petition for post-conviction relief.

[7] Kirby now appeals. Additional facts will be provided as necessary.

## DISCUSSION AND DECISION

### I. *Standard of Review*

[8] Under the rules of post-conviction relief, the petitioner must establish the grounds for relief by a preponderance of the evidence. Ind. Post-Conviction Rule 1, § 5; *Strowmatt v. State*, 779 N.E.2d 971, 974-75 (Ind. Ct. App. 2002). To succeed on appeal from the denial of relief, the post-conviction petitioner must show that the evidence is without conflict and leads unerringly and unmistakably to a conclusion opposite that reached by the post-conviction court. *Id*. at 975. The purpose of post-conviction relief is not to provide a substitute for direct appeal, but to provide a means for raising issues not known or available to the defendant at the time of the original appeal. *Id*. If an issue was available on direct appeal but not litigated, it is waived. *Id*.

## II. *Ineffective Assistance of Counsel*

[9] Kirby contends that she was denied the effective assistance of both trial and appellate counsel. The standard by which we review claims of ineffective assistance of counsel is well established. In order to prevail on a claim of this nature, Kirby must satisfy a two-pronged test, showing that: (1) her counsel's performance fell below an objective standard of reasonableness based on prevailing professional norms; and (2) there is a reasonable probability that, but for counsel's errors, the result of the proceeding would have been different. *Johnson v. State*, 832 N.E.2d 985, 996 (Ind. Ct. App. 2005) (citing *Strickland v. Washington*, 466 U.S. 668, 690, 694, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), *reh'g denied*), *trans. denied*. The two prongs of the *Strickland* test are separate and independent inquiries. *Johnson*, 832 N.E.2d at 996. Thus, "[i]f it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice . . . that course should be followed." *Timberlake v. State*, 753 N.E.2d 591, 603 (Ind. 2001) (quoting *Strickland*, 466 U.S. at 697), *reh'g denied, cert. denied*, 537 U.S. 839 (2002).

[10] Counsel is afforded considerable discretion in choosing strategy and tactics and we will accord those decisions deference. *Timberlake*, 753 N.E.2d at 603. A strong presumption arises that counsel rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment. *Id*. The *Strickland* Court recognized that even the finest, most experienced criminal defense attorneys may not agree on the ideal strategy or the most effective way to represent a client. *Id*. Isolated mistakes, poor strategy, inexperience, and

instances of bad judgment do not necessarily render representation ineffective. *Id.* Furthermore, we will not speculate as to what may or may not have been advantageous trial strategy as counsel should be given deference in choosing a trial strategy which, at the time and under the circumstances, seems best. *Johnson*, 832 N.E.2d at 997.

### A. *Trial Counsel*

Kirby contends that her trial counsel rendered ineffective assistance because she "failed to object at trial to testimony regarding Kirby's dealing in prescription drugs within one year prior to the crash." (Appellant's Br. p. 28).

On April 20, 2000, during the trial court proceedings, trial counsel filed a request for 404(b) notice, requesting the State to provide reasonable notice of any evidence of other crimes, wrongs, or acts it intended to present at trial. Following three separate hearings, the trial court issued a preliminary order, determining, in pertinent part, that "the prejudicial effect of the alleged interstate drug trafficking evidence substantially outweigh[ed] its probative value" and therefore would be inadmissible "unless and until the Defense opens the door." (D.A. App. p. 518).[1] On March 15, 2001, the State filed its Motion to Reconsider Court's Order Re: Admissibility of 404(b) Evidence, asserting the discovery of "additional evidence that the [c]ourt had not considered at the

---

[1] The records in the direct appeal will be referenced as "D.A. ___", whereas the records of the post-conviction proceeding will be referenced as "PCR ____".

time of its ruling[,]" to which Kirby formally objected five days later. (D.A. App. p. 642). After scheduling the issue for further evidence, the trial court held an evidentiary hearing on April 11 and 12, 2001. Thereafter, on April 22, 2001, the trial court ruled that evidence of Kirby's drug dealings within one year of March 25, 2000 would be admissible "only as to [Kirby's] motive, intent, plan, knowledge, absence of mistake or accident as to [Kirby's] acts on March 25, 2000 and for no other reason." (D.A. App. p. 898). The trial court recognized that "while the evidence is prejudicial" to Kirby, "the probative value of the evidence substantially outweigh[ed] its prejudicial effect because of the unique nature of the defense asserted by [Kirby] both now and under the previous insanity defense." (D.A. App. p. 898). During the trial, the State offered the prior bad act evidence for admission; Kirby's counsel failed to contemporaneously object.

[13] A contemporaneous objection at the time the evidence is introduced at trial is required to preserve the issue for appeal. *Brown v. State*, 929 N.E.2d 204, 207 (Ind. 2010), *reh'g denied*. The purpose of this rule is to allow the trial judge to consider the issue in light of any fresh developments and also to correct any errors. *Id*. The failure to make a contemporaneous objection to the admission of evidence at trial results in waiver of the error on appeal. *Jackson v. State*, 735 N.E.2d 1146, 1152 (Ind. 2000). At the hearing on post-conviction relief, Kirby's trial counsel admitted that she "didn't object" when the State sought to introduce the evidence of Kirby's drug dealing. (PCR Tr. p. 38).

[14] However, in order to demonstrate "ineffective assistance of counsel for failure to object, a defendant must prove that an objection would have been sustained if made and that he was prejudiced by counsel's failure to make an objection." *McKnight v. State*, 1 N.E.3d 193, 202 (Ind. Ct. App. 2013).

[15] Here, Kirby fails at the first prong. After concluding on direct appeal that Kirby had waived her argument on the prior bad act evidence for our review, the appellate court determined that, waiver notwithstanding, "we would not reverse Kirby's convictions based upon the trial court's admission of evidence pertaining to Kirby's prior drug dealings." *Kirby*, 774 N.E.2d at 533. Notably,

> evidence of Kirby's prior drug dealing was highly relevant to the issue of Kirby's state of mind at the time of the fatal collision. Indeed, such evidence was offered to prove an element of the State's theory that Kirby was motivated to commit suicide because she had engaged in drug dealing and was afraid that she was under investigation, would be arrested, and would lose her children as a consequence. Accordingly, the trial court did not abuse its discretion by permitting the State to introduce evidence of Kirby's drug dealing activities in the year preceding the collision.

*Id*. Thus, even if Kirby's trial counsel would have contemporaneously objected to the introduction of the prior bad act evidence, the trial court would have overruled her objection based on relevancy considerations. Therefore, as a proper objection would not have been sustained, we conclude that Kirby's trial counsel was not ineffective for failing to object.

## B. *Appellate Counsel*

[16] Next, Kirby contends that her appellate counsel rendered ineffective assistance by failing to raise the issue of a presumed defective jury instruction. The

standard by which we review claims of ineffective assistance of appellate counsel is the same standard applicable to claims of trial counsel ineffectiveness. *Wright v. State*, 881 N.E.2d 1018, 1022 (Ind. Ct. App. 2008), *reh'g denied, trans. denied*. Our supreme court identified three categories of appellate counsel ineffectiveness claims, including: (1) denial of access to an appeal; (2) waiver of issues; and (3) failure to present issues well. *Bieghler v. State*, 690 N.E.2d 188, 193-95 (Ind. 1997), *reh'g denied, cert. denied*, 525 U.S. 1021 (1998).

[17] Where, as here, a defendant raises a waiver of issue claim, we employ a two-part test: (1) whether the unraised issues are significant and obvious from the face of the record; and (2) whether the unraised issues are clearly stronger than the raised issues. *Id*. at 194. Otherwise stated, to prevail on a claim of ineffective assistance of appellate counsel, a defendant must show from the information available in the trial record or otherwise known to appellate counsel that appellate counsel failed to present a significant and obvious issue and that this failure cannot be explained by any reasonable strategy. *Ben-Yisrayl v. State*, 738 N.E.2d 253, 260-61 (Ind. 2000), *reh'g denied, cert. denied*, 534 U.S. 1164 (2002). However, we "should be particularly sensitive to the need for separating the wheat from the chaff in appellate advocacy, and should not find deficient performance when counsel's choice of some issues over others was reasonable in light of the facts of the case and the precedent available to counsel when that choice was made. *Fisher v. State*, 810 N.E.2d 674, 677 (Ind. 2004) (citing *Timberlake*, 753 N.E.2d at 605).

[18] In her post-conviction relief proceedings, Kirby challenges the effectiveness of her appellate counsel by failing to appeal a presumed defective tendered jury instruction. The final jury instruction reads as "[a] person is presumed to have caused the reasonable results of her own acts."[2] (D.A. App. p. 2848). Kirby argues that the jury instruction impermissibly created a mandatory presumption in favor of the State, effectively shifting the burden of proof.

[19] On direct appeal, Kirby's appellate counsel presented six issues of reversible error. She disputed the trial court's denial of her motion to dismiss pursuant to Ind. Criminal Rule 4(B); the admission of prior bad act evidence pursuant to Ind. Evidence Rule 404(b); the denial of two motions for mistrial predicated upon prosecutorial misconduct; the failure to give a circumstantial evidence instruction; the presence of two officers in the courtroom despite a separation of witnesses order; and the appropriateness of her sentence. After review, we affirmed the trial court, and our supreme court denied transfer. *See Kirby*, 774 N.E.2d at 540. The issues raised in direct appeal were either waived or posed

---

[2] The State's original proposed instruction stated that "a person is presumed to have intended the reasonable results of her own act." (D.A. Tr. p. 2727). Defense counsel objected because "it's an incorrect statement of the law" that would mislead and confuse the jury and "ignores the elements of knowing and voluntary." (D.A. Tr. p. 2727). After doing some research, the trial court amended the "intended" language to "caused" and tendered the instruction without objection. In *Kane v. State*, 976 N.E.2d 1228, 1231 (Ind. 2012), defense counsel objected to a State's proposed instruction on the ground that it was an incorrect statement of the law. After the trial court sent an intern to research the tendered instruction, the trial court modified it before instructing the jury. *Id*. As in *Kane*, where our supreme court noted that "this is enough to show that the trial judge considered whether the proposed instruction was an incorrect statement of the law and thus to preserve for appeal an objection to the instruction on that ground," we find that Kirby's trial counsel's objection in the instant case was sufficient to preserve the issue for review. *Id* at 1232.

fairly straightforward, common legal questions. By contrast, the unraised issue stands on a "different footing." *See Fisher*, 810 N.E.2d at 677.

[20] There is no question that at the time of Kirby's jury trial in 2001, the law on mandatory and permissive jury instructions was still being formulated and adjusted. In *Sandstrom v. Montana*, 442 U.S. 510, 99 S.Ct. 2450, 61 L.Ed.2d 39 (1979), the Supreme Court held that the jury could have interpreted an instruction stating "[t]he law presumes that a person intends the ordinary consequences of his voluntary acts" as a mandatory presumption. *Id*. at 513. Thus, the Court held that the instruction improperly shifted the burden of proof on the issue of intent, violating the Due Process Clause by not requiring the State to prove every element of the crime charged. *Id*. at 520-21. The Court reasoned that the instruction denied the defendant due process in cases where intent is at issue because it failed to explain that this presumption could be rebutted by the defendant coming forth with evidence to the contrary. *Id*. at 517-18.

[21] Shortly thereafter, the Indiana supreme court considered the same issue in *Jacks v. State*, 394 N.E.2d 166 (1979). Distinguishing the *Sandstrom* instruction, the jury instruction in *Jacks* read, "everyone is presumed to intend the natural and probable consequences of his voluntary acts, unless the circumstances are such to indicate the absence of such intent." *Id.* at 174. The *Jacks* court held that this instruction did not have either the conclusive or burden-shifting effect as the instruction in *Sandstrom* because the presumption was qualified by relaying that

jurors could look to the surrounding circumstances in the present case. *Id*. at 175.

[22] This issue has since been the subject of much debate. The United States Supreme Court, relying on *Sandstrom*, later explained that the analysis hinged on the difference between a mandatory presumption and a permissive inference. *Francis v. Franklin*, 471 U.S. 307, 314, 105 S.Ct. 1965, 85 L.Ed.2d 344 (1985). Specifically, the Court stated,

> A mandatory presumption instructs the jury that it must infer the presumed fact if the State proves certain predicate facts. A permissive inference suggests to the jury a possible conclusion to be drawn if the State proves predicate facts, but does not require the jury to draw that conclusion.

*Id*. The Court also pointed out that the challenged portion of the instruction "must be considered in the context of the charge as a whole." *Id*. at 315. The Court advised that other instructions might explain the infirm language, so that the jury would not consider the instruction in question to create a mandatory presumption. *Id*. Despite these considerations, the Court in *Francis* held that the instructions preceding it created a mandatory presumption. These instructions read, "acts of a person of sound mind and discretion are presumed to be the product of the person's will" and "a person 'is presumed to intend the natural and probable consequences of his acts.'" *Id*. at 316. Moreover, the Court reasoned that the infirmity of these instructions was not cured by the language that followed in the instructions. *Id*.

[23] Ten years later, our supreme court concluded in *Winegeart v. State*, 665 N.E.2d 893, 904 (Ind. 1996), that it was not fundamental error to read an instruction, which includes the phrase that the jury may infer that every person intends the natural and probable consequences of his voluntary acts. Even though the appellant argued that such an instruction impermissibly relieved the State of its burden to prove specific intent, the court reasoned that the instruction's repeated use of the word "may" throughout the instruction created only permissive inferences, and thus there was no error. *Id*. *But see Walker v. State*, 632 N.E.2d 723, 724 (Ind. 1994) (holding on rehearing that the instruction "[e]very man is presumed to intend the natural consequences of his acts" denied defendant fundamental due process and the neighboring instructions failed to explain that the State had the burden of proof), *reh'g denied*.

[24] More recently, our court held that informing the jury that the law presumes that an individual intends the consequences of his act was fundamentally erroneous. *Matthews v. State*, 718 N.E.2d 807, 810 (Ind. Ct. App. 1999). The court emphasized that this instruction covered one of the elements charged, the defendant's intent, and the other instructions regarding intent given at a later date did not serve to qualify the instruction. *Id*.

[25] The most recent pronunciation on the issue can be found in *Lampkins v. State*, 749 N.E.2d 83 (Ind. Ct. App. 2001), *trans. denied*. Similar to the language in *Sandstrom* and *Matthews*, the disputed jury instruction in *Lampkins* read, "[t]he law presumes that an individual intends the natural consequences of his act." *Id.* at 87. The court noted that "[u]nlike *Jacks* and *Wingeart*, where the

instructions in question read that the jury *may* infer intent, the instruction here implied an irrebutable presumption that if Lampkins fired the gun, the law presumed intent." *Id.* Likening the jury instruction to the type of language struck down in *Francis*, the *Lampkins* court concluded that the instruction was defective as it failed to inform the jury that "any inferences made from Lampkins' actions are permissive." *Id.* This error was not cured as the surrounding instructions "did not serve to qualify the mandatory presumption." *Id.*

[26] By instructing that "[a] person is presumed to have caused the reasonable results of his own act[]" in the instant case, the jury was tendered an irrebutable, mandatory presumption. The mere substitution of the verb 'intend' with the verb 'cause' is not enough to lift the instruction into the realm of permissible jury instructions. In the context used, it is clear that the jury could have interpreted the instruction similar to the *Lampkins* instruction, which directed them to presume Kirby intended the reasonable results of her own actions.

[27] The additional instructions tendered to the jury do not explain the constitutionally infirm language. Prior to the defective instruction, the jury was told that "[e]ngaging in conduct while aware of a high probability that it will result in a murder of someone is sufficient to sustain a conviction even if the [d]efendant is not aware of the identity of the victim." (D.A. Tr. p. 2847). The contested jury instruction is followed by the directive that "[u]nder the law of this state you must presume the [d]efendant is innocent. You must continue to

believe she is innocent throughout the trial unless the state proves the [d]efendant is guilty beyond a reasonable doubt of every essential element of the crime charged." (D.A. Tr. pp. 2847-48). "[G]eneral instructions as to the State's burden and the defendant's presumption of innocence are not enough to cure any infirmity in the challenged portion of the instruction." *Geiger v. State*, 721 N.E.2d 891, 895-96 (Ind. Ct. App. 1999) (citing *Francis*, 471 U.S. at 319). Accordingly, as the jury instruction was constitutionally defective, the issue was clearly stronger than the issues raised by appellate counsel on direct appeal.

[28] Nonetheless, even though Kirby's appellate counsel's choice in appellate issues was not reasonable, Kirby did not demonstrate "a reasonable probability that, but for counsel's error, the result of the proceeding would have been different." *Johnson*, 832 N.E.2d at 996. Even though the instruction was erroneous, we agree with the post-conviction court that after the jury was instructed, no undue attention was placed on it. The trial court tendered the short one-sentence instruction and thereafter, neither party referenced it during closing argument. Rather, the State repeatedly addressed the different elements it had to establish for a guilty verdict, including the intent element. Both sides uniformly and repeatedly urged the jury to determine Kirby's state of mind at the time of the collision.

[29] Moreover, even if a proper instruction would have been tendered, the jury would still have "summarily rejected Kirby's intent defense of psychosis induced by hyperthyroidism." (PCR App. p. 102). Based on the voluminous evidence presented—approximately forty eyewitnesses, fifteen professional

witnesses, and two accident reconstruction expert witnesses—the jury would have reached a the same guilty verdict by concluding that, at the time of the accident, Kirby was suicidal, "a woman on a mission," because Tinnie had rejected her, she believed she would be arrested for dealing drugs, and she was afraid to lose her children. (D.A. App. p. 2753). Therefore, Kirby did not receive ineffective assistance of appellate counsel.

## CONCLUSION

[30] Based on the foregoing, we conclude the Kirby received effective assistance of counsel and therefore, the post-conviction court properly denied Kirby's petition for post-conviction relief.

[31] Affirmed.

[32] Altice, J. concurs in part and concurs in result in part as to Issue 2 with separate opinion

[33] Brown, J. concurs with concurring in part and concurring in result in part as to Issue 2 separate opinion

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| Judy Kirby, | ) | |
| | ) | |
| Appellant-Petitioner, | ) | |
| | ) | |
| vs. | ) | No. 55A01-1503-PC-85 |
| | ) | |
| State of Indiana | ) | |
| | ) | |
| Appellee-Respondent. | ) | |
| | ) | |

**ALTICE, Judge, concurring in part and concurring in result in part.**

[34]    I agree with my colleagues' analysis and conclusion that Kirby did not receive ineffective assistance of trial counsel. As for Kirby's claim of ineffective assistance of appellate counsel, I must part ways with the majority's analysis. The instructional issue presented by post-conviction counsel is, in my mind, neither significant and obvious from the face of the record nor clearly stronger than the issues raised by appellate counsel on direct appeal.

[35]    The law is clear, as set out in detail in the lead opinion, that an instruction regarding intent may not create a mandatory presumption in favor of the State.

In other words, the jury may not be instructed along the lines that the law presumes that an individual intends the natural consequences of his act. *Lampkins v. State*, 749 N.E.2d 83, 85-87 (Ind. Ct. App. 2001), *trans. denied.* *See also Matthews v. State*, 718 N.E.2d 807, 810 (Ind. Ct. App. 1999) (holding that informing the jury that the law presumes that an individual intends the consequences of his act was fundamentally erroneous).

[36] In this case, the State tendered an erroneous instruction regarding intent: "a person is presumed to have *intended* the reasonable results of her own act." *D.A. Transcript* at 2727 (emphasis supplied). The trial court, properly, did not give the instruction as proposed. The court modified the instruction by removing the reference to intent and, instead, instructing the jury that "[a] person is presumed to have *caused* the reasonable results of her own acts." *Id*. at 2847 (emphasis supplied). While this brief instruction is not a model of clarity, I fail to see how it can be read to impose a mandatory presumption regarding intent. Moreover, I agree with the post-conviction court's recognition of the "benign placement" of the complained-of sentence, which, unlike in *Lampkins*, was not part of the mens rea instruction. *PCR Appendix* at 129.

[37] On the issue of appellate counsel's effectiveness, I would conclude that counsel did not err in failing to challenge this jury instruction on direct appeal.