Judy D. KIRBY, Appellant–Defendant,

v.

STATE of Indiana, Appellee–Plaintiff.

No. 55A01–0109–CR–335.

Court of Appeals of Indiana.

Aug. 29, 2002.

Jennifer Jones Auger, Jones Hoffman & Admire, Franklin, IN, Attorney for Appellant.

Steve Carter, Attorney General of Indiana, James B. Martin, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

## OPINION

SHARPNACK, Judge.

Judy D. Kirby appeals her convictions for seven counts of murder as felonies,[1] four counts of neglect of a dependent resulting in serious bodily injury as class B felonies,[2] and one count of aggravated battery as a class B felony,[3] and her sentences for seven counts of murder and one count of aggravated battery. Kirby raises seven issues, which we consolidate and restate as:

I. Whether the trial court erred by denying her motion to dismiss pursuant to Ind. Criminal Rule 4(B) because the State had failed to bring her to trial within seventy days;

II. Whether the trial court abused its discretion by admitting evidence of prior bad acts under Ind. Evidence Rule 404(b);

III. Whether the trial court abused its discretion by denying two motions for mistrial predicated upon prosecutorial misconduct;

IV. Whether the trial court abused its discretion by failing to give a circumstantial evidence instruction;

V. Whether the trial court abused its discretion by allowing two officers to remain in the courtroom despite a separation of witnesses order; and

VI. Whether her sentence is manifestly unreasonable in light of the offenses committed and the character of the offender.

We affirm.

The issue on which this case turned at trial was Kirby's state of mind on March 25, 2000, as she drove her car toward the collision that took the lives of seven people. The State's theory was that Kirby intended to commit suicide because of her tumultuous relationship with her boyfriend, Tinnie Kirby ("Tinnie"), and her fear of either being arrested as a result of her involvement with drugs or losing her children. The defense maintained that Kirby suffered from a medical condition called hyperthyroidism, which caused her to become psychotic and paranoid. The defense also contended that Kirby's medical condition, coupled with a badly designed highway ramp and poor medical treatment, was the cause of the fatal collision.

The facts most favorable to the convictions follow. For some time prior to March 25, 2000, Kirby was under stress because of her relationship with Tinnie and her concern about losing him and her children. Kirby was also concerned about getting into trouble with the police because of her involvement with drugs. As a result of this stress, Kirby exhibited many bizarre behaviors, such as wearing disguises, placing cameras in trees, reporting that people were watching and following her, and expressing thoughts of suicide. On March 2, 2000, Kirby was involuntarily committed to the psychiatric unit at St. Francis Hospital. There, Kirby was diagnosed with psychosis and given Risperdol, an anti-psychotic drug. Kirby was also diagnosed with hyperthyroidism. On March 4, 2000, Kirby's mental condition had improved to the point where she was no longer seen as an immediate danger to herself or others and, thus, she was released from St. Francis Hospital.

On March 25, 2000, Kirby, three of her eight children, and her nephew, J.Y., (col-

---

1. Ind.Code § 35–42–1–1.

2. Ind.Code §§ 35–46–1–4(a)(1), –4(b)(2).

3. Ind.Code § 35–42–2–1.5.

lectively, the "Children") left the Greenwood residence of Jeanetta Scott, Kirby's sister, and drove to a car wash and then to a McDonald's for soft drinks. Scott was worried about Kirby's condition and followed Kirby in her own car. When Kirby left McDonald's, she passed Scott's car and then came to a complete stop in the roadway. Scott went around Kirby's stopped car and turned around at the first side street available. However, Scott lost sight of Kirby because Kirby drove away after Scott had passed her.

Subsequently, Kirby stopped her car at a stop sign near Sarah Mullis's driveway and remained there for approximately two minutes as other motorists drove around her. Mullis approached Kirby's car and asked if Kirby needed to use her telephone. After Kirby indicated that she did need to use the telephone, Mullis went into her house, got a cordless telephone, and gave it to Kirby. Kirby drove away with the phone, and Mullis called 9–1–1. However, when Mullis looked out a window, she saw Kirby's car sitting in front of her garage. Mullis went outside and retrieved the telephone. Kirby sat in her car in Mullis's driveway staring straight ahead for approximately five minutes and then drove off.

Kirby then showed up uninvited at a baby shower at State Road 67 and High School Road. Kirby exclaimed to everyone at the shower that she was looking for a birthday party because it was her son's birthday. Kirby and the Children stayed at the baby shower for approximately fifteen or twenty minutes and then left in Kirby's car.

At approximately 4:44 p.m., Kirby arrived at a gas station on State Road 67 in Martinsville, Indiana, where she purchased gas and candy. Shortly before 5:00 p.m., Kirby left the gas station and drove her car the wrong way, entering an exit ramp from State Road 67. Kirby accelerated as she drove the wrong way on the exit ramp. Kirby traveled northbound in the southbound lanes of State Road 67. Nine motorists had to take evasive action, such as driving away from the lane in which Kirby was speeding the wrong way, to avoid colliding with Kirby's car. One motorist had continually blown her horn to alert Kirby to the danger. Several motorists testified that Kirby had made no effort to evade oncoming traffic. In addition, Kirby passed six "wrong way" traffic signs and ten "do not enter" signs, which were posted along the roadway and visible to motorists. There was also an emergency lane available to Kirby for getting out of the way of oncoming traffic. Eventually, Kirby's car clipped the back of another car and then collided with a van, causing the van to vault into the air and then land on its side. Kirby's car was traveling over ninety miles per hour when it struck the van. A later investigation of Kirby's car indicated that her brake lights were not "on" at the time of impact.

The van's passengers included Tom Reel, his son, Bradley Reel, and his daughter, Jessica Reel (collectively, the "Reels"), and Bradley's friend, Richard Miller. The Children and the Reels all died at the scene of the collision. Miller was injured and suffered permanent impairment of his back and right foot. Kirby was thrown from her car and suffered a closed head injury and various orthopedic injuries.

On April 14, 2000, the State charged Kirby with seven counts of murder as felonies, four counts of neglect of a dependent resulting in serious bodily injury as class B felonies, and one count of aggravated battery as a class B felony. On April 20, 2000, Kirby filed a request for evidence that the State intended to present under

Ind. Evid. Rule 404(b),[4] which the trial court granted. The trial court set a deadline of March 14, 2001, for the State to disclose to Kirby all new 404(b) evidence. On January 25, 2001, Kirby filed a motion for speedy trial pursuant to Ind. Criminal Rule 4(B). In response, the trial court scheduled Kirby's jury trial for April 3, 2001. Subsequently, on March 14, 2001, the State filed its updated witness list. Kirby then filed two requests for a continuance of the trial, the second of which the trial court granted. However, in granting Kirby's second motion for continuance, the trial court assigned the delay to both Kirby and the State. On April 6, 2001, Kirby filed her motion to dismiss pursuant to Ind. Criminal Rule 4(B), which the trial court denied.

The trial court conducted a jury trial, and the jury found Kirby guilty as charged. At sentencing, the trial court merged the four convictions of neglect of a dependent resulting in serious bodily injury as class B felonies into the murder convictions of the Children. The trial court then sentenced Kirby to sixty-five years each for the three murders of the Reels, fifty-five years each for the four murders of the Children, and twenty years for the aggravated battery of Miller. Further, the trial court ordered that the sentences for the murders of the Reels be served consecutively to each other and to the sentence for the aggravated battery of Miller. The trial court ordered that the sentences for the murders of the Children be served concurrently to each other and

to all other sentences. Thus, the trial court sentenced Kirby to an aggregate two hundred and fifteen year term of incarceration.

## I.

The first issue is whether the trial court erred by denying Kirby's motion to dismiss pursuant to Ind. Criminal Rule 4(B) because the State had failed to bring her to trial within seventy days. We review this matter de novo. *See Vaughan v. State*, 470 N.E.2d 374, 377 (Ind.Ct.App. 1984) (implicitly reviewing an Ind. Criminal Rule 4(B) question about which party was responsible for a delay under a de novo standard), *reh'g denied, trans. denied*.

On January 25, 2001, Kirby filed a request for speedy trial under Ind. Criminal Rule 4(B). By filing her motion for speedy trial, Kirby invoked the procedures and deadlines of Ind. Criminal Rule 4(B)(1), which provides in pertinent part:

> If any defendant held in jail on an indictment or an affidavit shall move for an early trial, he shall be discharged if not brought to trial within seventy (70) calendar days from the date of such motion, except where a continuance within said period is had on his motion, or the delay is otherwise caused by his act, or where there was not sufficient time to try him during such seventy (70) calendar days because of congestion of the court calendar.

---

4. Ind. Evid. Rule 404(b) governs the admission of prior bad acts into evidence and provides in relevant part:

   Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, intent, preparation, plan, knowledge, identity, or absence of mistake or

accident, provided that upon request by the accused, the prosecution in a criminal case shall provide reasonable notice in advance of trial, or during trial if the court excuses pre-trial notice on good cause shown, of the general nature of any such evidence it intends to introduce at trial.

We will refer to this evidence as 404(b) evidence throughout this opinion.

Accordingly, when a defendant files a request for a speedy trial, the State is obligated to bring him or her to trial within seventy days of the request unless delay is caused by court congestion or by the defendant. *Id.* If the State fails to bring the defendant to trial within the allotted time frame, including acceptable delays, the defendant is entitled to discharge. *Id.* When a delay is chargeable to the defendant, the period fixed by the rule is extended only by the period of the delay. Ind. Criminal Rule 4(F).

■ Kirby argues that, with respect to her motion for speedy trial, the trial court erred by refusing to discharge her because, while she did request a continuance of the original trial date of April 3, 2001, that continuance should have been charged solely against the State. Specifically, Kirby alleges that the State deliberately withheld 404(b) evidence until the last possible moment, which forced her to choose either to request a continuance of the trial date or to proceed to trial unprepared.

Our review of the Record reveals that Kirby made her motion for a speedy trial on January 25, 2001. In response, the trial court scheduled Kirby's trial for April 3, 2001. However, prior to moving for a speedy trial, Kirby had filed, and the trial court had granted, a request for notice of any evidence of other crimes, wrongs, or acts that the State intended to introduce at trial pursuant to Ind. Evid. Rule 404(b). After conducting several 404(b) hearings and in light of the April 3, 2001 trial date, the trial court established the deadline of March 15, 2001, for the State to disclose to Kirby any new 404(b) evidence. Kirby objected to this deadline because she believed it was too close to the trial date and, as a consequence, if the State were to present her with new 404(b) evidence on March 15, 2001, she would not be able to

effectively investigate the new evidence in time for trial.

Subsequently, on March 14, 2001, the State amended its list of witnesses to include twenty-two additional 404(b) witnesses. In response, Kirby immediately filed a motion to continue the April 3rd trial setting, wherein she alleged that the State's "actions in adding witnesses, supplying new information, and requesting reconsideration of the [trial court's] 404(b) ruling, have interfered with, interrupted and thwarted Defense counsel's trial preparation, by disclosing witnesses and creating new issues." Appellant's Appendix at 650. Kirby further alleged that, if the State had not updated its witness list, she would have been adequately prepared for the April 3rd trial date. Accordingly, Kirby expressly declined to waive her speedy trial rights and, instead, requested that the trial court continue the trial date and charge the delay to the State. Because Kirby refused to waive her right to a speedy trial, the trial court denied her request for a continuance. On March 22, 2001, Kirby again filed a motion to continue the April 3rd trial setting, which unlike the prior motion, did not contain any language regarding her refusal to waive her speedy trial rights. Accordingly, the trial court continued the trial setting to April 17, 2001 and charged the delay to both Kirby and the State.

Kirby contends that because the State's action of amending its witness list to include twenty-two new witnesses a mere three weeks prior to the scheduled trial date forced her to request a continuance of the April 3rd trial setting, the trial court should not have charged her with the delay. To support her position, Kirby relies upon our holdings in *Marshall v. State,* 759 N.E.2d 665, 668–670 (Ind.Ct.App.2001) (analyzing a defendant's right to a speedy trial under Ind. Criminal Rule 4(C)), *Cros-*

*by v. State,* 597 N.E.2d 984, 988–989 (Ind. Ct.App.1992); and *Biggs v. State,* 546 N.E.2d 1271, 1276 (Ind.Ct.App.1989). However, these cases are readily distinguishable from the present action.

In *Marshall,* we observed that while, generally, a defendant is responsible for any delay caused by his or her action including seeking or acquiescing in any continuance, a defendant cannot be charged with the delay if he or she made the motion because the State had failed to comply with a discovery request. *Marshall,* 759 N.E.2d at 669. There, the defendant filed a request to continue the trial because the State failed to provide him with DNA evidence that was essential to his trial preparation. *Id.* We held that because the State's failure to respond to the defendant's discovery request caused the delay, the defendant was not accountable for the delay of the trial date. *Id.*

In *Biggs,* we encountered a similar situation wherein the defendant sought a continuance, but argued that the delay should not be attributed to him because of the State's failure to provide discovery. *Biggs,* 546 N.E.2d at 1275. There, the defendants' motion for a continuance requested only that the trial be delayed until such time as the defendants' discovery requests were complied with by the State, so that the defendants would be adequately prepared for trial. *Id.* We held that "[t]o put the defendants in a position whereby they must either go to trial unprepared due to the State's failure to respond to discovery requests or be prepared to waive their rights to a speedy trial, is to put the defendants in an untenable situation." *Id.* Accordingly, under the facts and circumstances presented in *Biggs,* we refused to charge the defendants with any delay that may have resulted from their motion for a continuance. *Id.*

Similarly, in *Crosby,* we encountered a situation where the defendant's right to a speedy trial was violated due to the State's failure to provide the defendant with discovery. *Crosby,* 597 N.E.2d at 988. In that case, the trial court initially scheduled the trial within the seventy-day period. *Id.* However, the trial date was continued because of the State's negligence in complying with discovery and its late addition and amendment of the charges. *Id.* Accordingly, we charged the State with the delay. *Id.*

Unlike the circumstances presented in *Marshall, Biggs,* and *Crosby,* the delay of Kirby's trial did not result from the State's failure to provide Kirby with discovery. Indeed, the only action on the part of the State about which Kirby complains is the State's filing of its amended witness list that included twenty-two additional 404(b) witnesses. However, the State did not delay in providing its amended witness list to Kirby. Rather, it timely disclosed the amended witness list to Kirby in compliance with the trial court's deadline of March 15, 2001. Moreover, in this case, the trial court specifically found that, even in the absence of a continuance, Kirby "could have been prepared for the original trial date of April 3, 2001." Appellant's Appendix at 848. Thus, the trial court clearly considered the impact that the State's amended witness list would have on Kirby's ability to prepare for trial. As such, we cannot say that the trial court abused its discretion by finding that Kirby could have been prepared for trial without the continuance and by attributing the delay resulting from the continuance to Kirby. *See, e.g., Lockhart v. State,* 671 N.E.2d 893, 898 (Ind.Ct.App.1996) (refusing to hold that the trial court abused its discretion by finding that defense counsel would be unavailable and by setting the trial date outside of the seventy day period because of court congestion). Accordingly,

the trial court did not err by denying Kirby's motion to dismiss pursuant to Ind. Criminal Rule 4(B). *See, e.g., Covelli v. State*, 579 N.E.2d 466, 470 (Ind.Ct.App. 1991), *trans. denied.*

## II.

■ The second issue is whether the trial court abused its discretion by admitting evidence of Kirby's prior bad acts under Ind. Evid. Rule 404(b). Kirby argues that the trial court abused its discretion by allowing the State to introduce evidence that she had engaged in drug dealing during the year prior to the fatal car collision because such evidence bore no relevance to any matter in dispute and its probative value was substantially outweighed by its prejudicial effect. The State counters that Kirby has waived any claim of error based upon Ind. Evid. Rule 404(b) because she failed to "contemporaneously object to the admission of the testimony at trial." Appellee's Brief at 19. In her reply brief, Kirby concedes that her "counsel ... did not make an objection at trial to the introduction of this evidence, because defense counsel did not believe that an objection was necessary" given the lengthy and substantial fact-finding hearings and the trial court's specific finding that the evidence was admissible. Appellant's Reply Brief at 4. Because Kirby failed to object to the admission of evidence regarding her involvement in dealing drugs during the year immediately preceding the collision, she has waived appellate review of this issue. *See, e.g., McCarthy v. State*, 749 N.E.2d 528, 537 (Ind.2001) (finding waiver where defendant filed a motion in limine seeking to exclude 404(b) evidence, which the trial court denied, but failed to object to such evidence when it was introduced at trial).

■■ Waiver notwithstanding, however, we would not reverse Kirby's convic-

tions based upon the trial court's admission of evidence pertaining to Kirby's prior drug dealings. The trial court has broad discretion when ruling on the admissibility of evidence and when determining its relevancy. *Hopkins v. State*, 668 N.E.2d 686, 689 (Ind.Ct.App.1996), *reh'g denied, trans. denied.* We will disturb its ruling only upon a showing of an abuse of discretion. *Kremer v. State*, 514 N.E.2d 1068, 1073 (Ind.1987), *reh'g denied.* A trial court abuses its discretion when its evidentiary ruling is clearly against the logic, facts, and circumstances presented. *Burgett v. State*, 758 N.E.2d 571, 579 (Ind.Ct.App. 2001), *trans. denied.*

■ Here, evidence of Kirby's prior drug dealing was highly relevant to the issue of Kirby's state of mind at the time of the fatal collision. Indeed, such evidence was offered to prove an element of the State's theory that Kirby was motivated to commit suicide because she had engaged in drug dealing and was afraid that she was under investigation, would be arrested, and would lose her children as a consequence. Accordingly, the trial court did not abuse its discretion by permitting the State to introduce evidence of Kirby's drug dealing activities in the year preceding the collision. *See, e.g., Hopkins*, 668 N.E.2d at 689.

## III.

■ The third issue is whether the trial court abused its discretion by denying Kirby's motions for mistrial predicated upon prosecutorial misconduct. A mistrial is an extreme remedy warranted only when no other curative measure will rectify the situation. *James v. State*, 613 N.E.2d 15, 23 (Ind.1993). The determination of whether to grant a mistrial is within the trial court's discretion, and we will reverse only for an abuse of that discretion. *Schlomer v. State*, 580 N.E.2d 950,

955 (Ind.1991). An abuse of discretion has occurred if the trial court's decision is clearly against the logic and effect of the facts and circumstances before the trial court. *Gibson v. State,* 733 N.E.2d 945, 951 (Ind.Ct.App.2000). We accord great deference to the trial court's decision, as it is in the best position to gauge the circumstances and the probable impact on the jury. *Schlomer,* 580 N.E.2d at 955. When determining whether a mistrial is warranted, we must consider whether the defendant was placed in a position of grave peril to which he should not have been subjected. *Id.* The gravity of the peril is determined by the probable persuasive effect of the matter complained of on the jury's decision. *Id.* Generally, a timely and accurate admonition is an adequate curative measure for any prejudice that results from an improper comment made by a prosecutor. *Schlomer,* 580 N.E.2d at 956.

First, Kirby asserts that the trial court abused its discretion by denying her motion for mistrial when the prosecutor allegedly denied her a fair trial by referencing the fact that she was exercising her right not to testify under the Fifth Amendment. Second, Kirby challenges the trial court's denial of her second motion for mistrial when the prosecutor allegedly placed an evidentiary harpoon in front of the jury. We address each of these claims separately.

## A.

First, Kirby alleges that one of the prosecutor's comments, given in response to a witness's statement, unfairly emphasized her right not to testify. At trial, the prosecutor asked Tinnie questions regarding his relationship with Kirby and his dating activity with another woman. During this line of questioning, the prosecutor asked the following question: "Do you ... have any reason to believe it bothered [Kirby] though?" Transcript at 1527. Tinnie responded, "You can ask her." *Id.* at 1527. The prosecutor remarked, "Well, I can't." *Id.* Kirby maintains that this last comment warranted a mistrial.[5]

The Fifth Amendment to the United States Constitution prohibits compelling a defendant to testify against herself. *See* U.S. CONST. amend. V. Our supreme court has held that "a Fifth Amendment violation occurs when a prosecutor makes a statement that is subject to reasonable interpretation by a jury as an invitation to draw an adverse inference from a defendant's silence." *Jenkins v. State,* 725 N.E.2d 66, 69 (Ind.2000). After reviewing the Record in this case, we are not convinced that the prosecutor's comment rises to this level. Rather, the words "I can't" appear to be an inadvertent comment made by the prosecutor in response to an unexpected statement by the witness.

**5.** From the outset, we observe that Kirby may have waived this part of her argument on appeal. When facing prosecutorial misconduct, the defendant is required to object to the misconduct and request an admonishment. *Reid v. State,* 719 N.E.2d 451, 458 (Ind.Ct. App.1999), *reh'g denied, cert. denied,* 531 U.S. 995, 121 S.Ct. 489, 148 L.Ed.2d 461 (2000). If, after the trial court gives an admonishment, the defendant is still not satisfied, the proper procedure is to move for mistrial. *Id.* Generally, the failure to request an admonish-

ment or move for a mistrial results in waiver. *Id.* However, Kirby expressly declined an admonishment because she believed that such a request would only emphasize the reference and compound the error. Because Kirby made a motion seeking a remedy, albeit a drastic one, we decline to decide this case on the basis of waiver, and turn instead to the merits. *See e.g., Stone v. Stakes,* 749 N.E.2d 1277, 1280 (Ind.Ct.App.2001), *aff'd on reh'g,* 755 N.E.2d 220 (Ind.Ct.App.2001), *trans. denied.*

Even assuming, however, that the Prosecutor's comment was tantamount to an impermissible remark on Kirby's right not to testify, we still find no error. The statement did not place Kirby in a position of grave peril to which she should have not been subjected. *See Schlomer,* 580 N.E.2d at 955. The prosecutor's remark of "I can't" can more reasonably be taken as an inadvertent comment on his inability to ask Kirby a question rather than as an attempt to cast a negative inference upon her silence. *See, e.g., Hancock v. State,* 737 N.E.2d 791, 798 (Ind.Ct.App.2000) (finding no prosecutorial misconduct where the prosecutor's statements during closing argument did not amount to an unconstitutional comment on the defendant's failure to testify). Accordingly, the prosecutor's inadvertent comment did not subject Kirby to grave peril and, thus, the trial court did not abuse its discretion by denying Kirby's motion for mistrial. *See, e.g., Ben–Yisrayl v. State,* 690 N.E.2d 1141,1149 (Ind.1997) (finding that the trial court did not abuse its discretion where defendant was not placed in grave peril by prosecutor's comments), *reh'g denied, cert. denied,* 525 U.S. 1108, 119 S.Ct. 877, 142 L.Ed.2d 777 (1999).

### B.

■■■■ Second, Kirby asserts that the trial court abused its discretion by denying her second motion for mistrial, which she made when the State allegedly placed an evidentiary harpoon in front of the jury. An evidentiary harpoon is the placing of inadmissible evidence before the jury with the deliberate purpose of prejudicing the jurors against the defendant. *Evans v. State,* 643 N.E.2d 877, 879 (Ind.1994), *reh'g denied.* To prevail on such a claim of error, the defendant must show that: (1) the prosecution acted deliberately to prejudice the jury; and (2) the evidence was inadmissible. *Id.*

■■■■ In the present case, the alleged evidentiary harpoon of which Kirby complains occurred during the State's opening statement. While outlining his case-in-chief for the jury, the prosecutor made the following statement regarding a particular witness's testimony: "... [A]nd he will testify that he purchased Dalotta [sic], which is a prescription form of morphine from [Kirby] for years and the last time being a few weeks before the crash." Transcript at 36. Kirby immediately objected to the prosecutor's characterization of the evidence, asked to approach the bench, and requested a limiting instruction and a mistrial. Although the trial court denied Kirby's motion for mistrial, it gave the following admonishment:

> All right. Ladies and Gentlemen, any evidence of wrongdoing by [Kirby], other than what she is charged with, is being allowed only to go to show proof of intent, motive, plan, lack of accident, by [Kirby]. It's very unusual, but I have ruled that it can come in. However, you are only to consider recent evidence, within one year of the crash concerning [Kirby.] [The Prosecutor] made a statement concerning a time period outside of that. The only evidence that is relevant and will be admissible is within one year of the time of the crash. So from March 25th 1999 on. All right. You may continue.

*Id.* at 37.

As previously mentioned, a timely and accurate admonishment is presumed to cure any error in the admission of evidence. *James,* 613 N.E.2d at 23. Therefore, assuming arguendo that the prosecutor's statement was an evidentiary harpoon, the trial court cured any potential prejudice with its prompt admonishment. *See, e.g., id.* (holding that trial court's prompt admonishment was suffi-

cient to cure any prejudice with regard to the finding of guilt on the felony murder charge). Accordingly, Kirby was not placed in grave peril, and the trial court did not abuse its discretion by denying Kirby's motion for mistrial based upon the prosecutor's opening statement. *See, e.g., Bradley v. State*, 649 N.E.2d 100, 108 (Ind.1995) (holding that a mistrial was not required where trial court admonished the jury to limit its consideration of a witness's response), *reh'g denied.*

### IV.

The fourth issue is whether the trial court abused its discretion by failing to give a circumstantial evidence instruction. The giving of jury instructions is a matter within the sound discretion of the trial court, and we review the court's refusal to give a tendered instruction for an abuse of that discretion. *Harrison v. State*, 699 N.E.2d 645, 649 (Ind. 1998). Generally, we will reverse a trial court for failure to give a tendered instruction if: (1) the instruction is a correct statement of the law; (2) it is supported by the evidence; (3) it does not repeat material adequately covered by other instructions; and (4) the substantial rights of the tendering party would be prejudiced by failure to give it. *Creager v. State*, 737 N.E.2d 771, 776 (Ind.Ct.App.2000), *trans. denied.*

In the present case, Kirby argues that the trial court abused its discretion by refusing her tendered instruction on circumstantial evidence. Although the trial court instructed the jury on the definitions of both direct and circumstantial evidence, it refused to give the following portion of an instruction tendered by Kirby: "Where proof of guilt is by circumstantial evidence only, it must be so conclusive in character and point so surely and unerringly to the

guilt of the accused as to exclude every reasonable theory of innocence." Appellant's Appendix at 993. In so doing, the trial court relied upon the cases of *Spears v. State* and *Bailey v. State* for the proposition that "[w]here evidence of the actus reus is direct, no circumstantial evidence instruction is necessary regarding a defendant's mens rea." *Bailey v. State*, 438 N.E.2d 22, 25 (Ind.Ct.App.1982) (citing *Spears v. State*, 272 Ind. 634, 639, 401 N.E.2d 331, 335 (1980), *reh'g granted,* 272 Ind. 647, 403 N.E.2d 828, *overruled on other grounds by Hicks v. State*, 544 N.E.2d 500 (Ind.1989)).

Nevertheless, Kirby maintains that because her intent to commit the charged crimes was the only contested issue at trial, and, further, because evidence of her intent was circumstantial, the trial court abused its discretion by not instructing the jury on circumstantial evidence. In response, the State points out that Kirby's desired instruction must be given only where the evidence is wholly circumstantial. *Cox v. State*, 475 N.E.2d 664, 667–668 (Ind.1985).

Here, there was direct as well as circumstantial evidence linking Kirby to the crimes for which she was convicted. In particular, several motorists witnessed Kirby drive her car northbound on the southbound portion of State Road 67. Those motorists testified that they had to take evasive action to avoid colliding with Kirby. However, Kirby did not attempt to stop or otherwise evade oncoming traffic. Rather, these motorists witnessed Kirby's car accelerating as she continued to drive in the wrong direction. In addition, several witnesses saw the collision occur. Thus, there was direct evidence of the collision and of Kirby's status as the driver of the car. Because there was direct evidence of the crime, the trial court did not abuse its discretion in refusing the portion of Kir-

by's tendered instruction on circumstantial evidence. *See, e.g., id.*

## V.

The next issue is whether the trial court abused its discretion by allowing two police officers to remain in the courtroom despite a separation of witnesses order. Kirby contends that the trial court erroneously allowed both Detective Rick Lang of the Indiana State Police and Detective Scott Hamilton of the Morgan County Sheriff's Department to remain in the courtroom throughout the trial. Kirby requested, and the trial court ordered, a separation of witnesses pursuant to Ind. Evidence Rule 615, which provides:

At the request of a party, the court shall order witnesses excluded so that they cannot hear the testimony of or discuss testimony with other witnesses, and it may make the order on its own motion. This rule does not authorize the exclusion of (1) a party who is a natural person, or (2) an officer or employee of a party that is not a natural person designated as its representative by its attorney, or (3) a person whose presence is shown by a party to be essential to the presentation of the party's cause.

■■■■■■ The general premise of Ind. Evid. Rule 615 is that, upon request of any party, witnesses should be insulated from the testimony of other witnesses. *Long v. State,* 743 N.E.2d 253, 256–257 (Ind.2001), *reh'g denied.* To serve this objective, the rule's exceptions should be narrowly construed and cautiously granted. *Id.* A party seeking to exempt a witness from exclusion as "essential to the presentation of the party's cause" under clause (3) must convince the trial court that the "witness has such specialized expertise or intimate knowledge of the facts of the case that a party's attorney would not effectively func-

tion without the presence and aid of the witness." *Hernandez v. State,* 716 N.E.2d 948, 950 (Ind.1999) (internal citations omitted), *reh'g denied.* An exclusion under clause (3) would thus be inappropriate in cases where a person excluded under clauses (1) or (2) can provide the expertise and knowledge adequate to assist counsel. *Long,* 743. N.E.2d at 256. Likewise, permitting a party to retain more than one witness in the courtroom under clause (3) to assist during trial would be especially questionable. *Id.* The determination of whether a witness qualifies for the exemption found in clause (3) is within the trial court's discretion and is subject to review for an abuse of that discretion. *Id.* at 256–257.

■■■■ Here, after the trial court granted Kirby's motion for separation of witnesses, the State filed a motion to exclude Detective Lang and Detective Hamilton from the trial court's separation of witnesses order. Specifically, the State sought to exclude Detective Hamilton as an officer or employee of a party that is not a natural person. *See* Ind. Evid. Rule 615. The State moved to exclude Detective Lang from the trial court's separation of witnesses order as an essential witness, arguing that Detective Lang interviewed many of the 220 potential witnesses and, thus, his "presence at the State's table is essential in aiding the State to effectively question, cross-examine, and/or impeach these witnesses with prior inconsistent statements." Appellant's Appendix at 850. In response, the trial court found that Detective Lang should be allowed to assist at the State's table pursuant to *Long,* 743 N.E.2d 253 and *Vinson v. State,* 735 N.E.2d 828 (Ind.Ct.App.2000), *trans. denied, disapproved of by Long,* 743 N.E.2d 253. The trial court did not expressly find that Detective Lang was an essential witness. However, such a finding is implicit

in the fact that the trial court relied upon *Long*, 743 N.E.2d 253.

In *Long*, the defendant argued that the trial court abused its discretion by allowing a police agent to remain at the State's table during trial, despite a separation of witnesses order, because it had already permitted a state trooper to sit at the State's table and assist the prosecutor at trial. *Id.* at 257. The State explained that both officers were essential witnesses because the two police officers had divided many of the responsibilities of the investigation, often working separately, particularly when interviewing witnesses. *Id.* Our supreme court noted that forty-five nonpolice, nonexpert witnesses testified for the State, thirteen search warrants were issued, sixty-six exhibits were offered into evidence by the State, and, in preparation for this seven-day trial, the police conducted over 500 witness interviews and executed thirty searches during three to four years of police work covering leads in three separate states. *Id.* Accordingly, the *Long* court held that:

> Notwithstanding the important purpose of Rule 615 to minimize prospective witnesses from exposure to the testimony of other witnesses and our preference that the rule's exceptions be narrowly construed and cautiously granted, we decline to find that the trial court abused its discretion in finding [the agent] within the Rule 615 exception for persons essential to the presentation of the prosecutor's case.

*Id.*

Kirby argues that the trial court abused its discretion by permitting both detectives to remain at the State's table throughout trial because one of the detectives would have been sufficient to aid the State pursuant to Ind. Evid. Rule 615. In requesting Detective Lang's exception as "essential" under Ind. Evid. Rule 615, the State ex-plained that Detectives Lang and Hamilton both participated in the investigation and interviewed separate witnesses. In preparation for this four to six week trial, the detectives conducted approximately 220 witness interviews. Notwithstanding the important purpose of Ind. Evid. Rule 615 to minimize prospective witnesses from exposure to the testimony of other witnesses, we decline to find that the trial court abused its discretion by permitting both Detectives Lang and Hamilton to remain at the State's table during trial. *See, e.g., Long*, 743 N.E.2d at 257.

## VI.

■ The last issue is whether Kirby's sentence is manifestly unreasonable in light of the offenses committed and the character of the offender. We begin our analysis by recognizing that sentencing decisions are within the sound discretion of the trial court. *O'Connell v. State*, 742 N.E.2d 943, 951 (Ind.2001). Accordingly, we will alter a sentence authorized by statute only if it is manifestly unreasonable in view of the nature of the offense and the character of the offender. Ind. Appellate Rule 7(B) (2001) (formerly Ind. Appellate Rule 17); *Tobar v. State*, 740 N.E.2d 109, 113 (Ind.2000).

■ The Record reveals that, at sentencing, the trial court found the following aggravating circumstances: (1) the "horrific" nature and circumstances of the crimes; (2) several of the victims were less than twelve years of age; and (3) Kirby was in a position of trust to four of the victims. Sentencing Transcript at 43. In addition and in response to Kirby's request that the trial court consider a minimum sentence, rather than the presumptive sentence, the trial court found as an aggravator that the imposition of a reduced sentence would

depreciate the seriousness of the offenses.[6] *Id.* Next, the trial court merged the four convictions of neglect of a dependent resulting in serious bodily injury as class B felonies into the murder convictions of the Children. The trial court then sentenced Kirby to sixty-five years each for the murders of the Reels and ordered Kirby to serve these sentences consecutive to each other and to the twenty-year sentence for the aggravated battery of Miller. The trial court also sentenced Kirby to fifty-five years each for the murders of the Children and ordered that those sentences be served concurrent to each other and to the others.

Kirby does not dispute that the aggravators relied upon by the trial court were valid. Rather, she maintains that the trial court erred by applying the position of trust and age of the victim aggravators to enhance her sentences for the murder of the Reels and the aggravated battery of Miller. Although the *position of trust and age of the victim aggravators* apply most directly to the murder of the Children, they also necessarily relate to the murder of the Reels and the aggravated battery of Miller because the latter offenses were somewhat contingent upon the murder of the Children.[7] Accordingly, we find no error in applying these two aggravators to all counts.

▇▇▇ Even assuming that the trial court erroneously applied the position of trust and age of the victim aggravators to enhance Kirby's sentence for the murder of the Reels and the aggravated battery of Miller, we are still not in a position to reverse or revise Kirby's sentences. As previously mentioned, the trial court relied upon four aggravating circumstances when it imposed Kirby's sentences. Our supreme court has held that "[e]ven when a trial court improperly applies an aggravator, a sentence enhancement may be upheld if other valid aggravators exist." *Walter v. State,* 727 N.E.2d 443, 447–448 (Ind.2000). Indeed, a single aggravating circumstance may be sufficient to support an enhanced sentence. *Id.* Accordingly, because the trial court considered other proper aggravators, namely the horrific nature and circumstances of the crimes and the fact that a reduced sentence would depreciate the seriousness of the offenses, when it sentenced Kirby for the murders of the Reels and the aggravated battery of Miller, we find no error. *See, e.g., id.*

▇▇▇ Kirby next argues that her sentence was manifestly unreasonable because "the trial court gave insufficient weight to the mitigating factors." Appellant's Brief at 41. The finding of mitigating circumstances is within the discretion of the trial court. *Ellis v. State,* 736 N.E.2d 731, 736 (Ind.2000). An allegation that the trial court failed to identify or find a mitigating circumstance requires the defendant to establish that the mitigating

---

6. The trial court's use of this aggravating factor was proper because the trial court was considering Kirby's request that it impose a minimum, rather than the presumptive or maximum, sentence. Our supreme court has held that the "imposition of a reduced sentence would depreciate the seriousness of the offense" aggravator serves to support a trial court's refusal to reduce the presumptive sentence. *See, e.g., Miller v. State,* 720 N.E.2d 696, 707 (Ind.1999); and *Hollins v. State,* 679 N.E.2d 1305, 1308 (Ind.1997).

7. The evidence presented at trial demonstrates that Kirby did not intend to crash into the Reels' car resulting in the murder of the Reels and the aggravated battery of Miller. Rather, she apparently intended to kill herself, and thus necessarily killing her children in the process, by driving her car the wrong way on a busy street. Kirby likely anticipated that she would collide with an oncoming car, however, the Reels were not specifically intended victims.

evidence is both significant and clearly supported by the record. *Rascoe v. State,* 736 N.E.2d 246, 249 (Ind.2000). The trial court is not obligated to accept the defendant's contentions regarding what constitutes a mitigating circumstance. *Ellis,* 736 N.E.2d at 736. Moreover, the trial court is not required to explain why it did not find a certain factor to be significantly mitigating. *Dunlop v. State,* 724 N.E.2d 592, 594 (Ind.2000), *reh'g denied.* Failure to find a mitigating circumstance clearly supported by the record, however, gives rise to a belief that the trial court was not cognizant of the circumstance and therefore failed to consider it. *Georgopulos v. State,* 735 N.E.2d 1138, 1145 (Ind.2000).

In the present case, the Record demonstrates that the trial court considered the following mitigating circumstances: (1) the crimes were the result of circumstances unlikely to recur; (2) Kirby was suffering from mental health issues; (3) Kirby acted under the strong provocation of another; and (4) Kirby's imprisonment will result in undue hardship to her dependents. After considering these mitigating circumstances and weighing them against the many aggravators present in the case, the trial court determined that the aggravating circumstances outweighed the mitigating circumstances. Kirby has not shown error sufficient to overcome the trial court's discretion on this point. *See, e.g., Jones v. State,* 705 N.E.2d 452, 455 (Ind.1999).

Turning to the nature of the offenses and the character of the offender, Kirby was sentenced to two hundred and fifteen years of imprisonment for: (1) seven counts of murder; and (2) one count of aggravated battery. The Record reveals that Kirby directed these crimes at her children, her nephew, and the public at large. In fact, Kirby drove her car in the wrong direction on a busy highway in total disregard of the safety of her passengers and every motorist who happened to be driving southbound on State Road 67 that fateful day. Based upon our review of the Record, we see nothing in the nature of these offenses or the character of this offender which would suggest that Kirby's two hundred and fifteen year sentence is unreasonable, let alone manifestly so. *See, e.g., Allen v. State,* 722 N.E.2d 1246 (Ind. Ct.App.2000).

For the foregoing reasons, we affirm Kirby's convictions and her two hundred and fifteen year sentence.

Affirmed.

FRIEDLANDER, J., and BROOK, C.J., concur.