**Pursuant to Ind.Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**

ATTORNEY FOR APPELLANT:

**MARCE GONZALEZ, JR.**
Dyer, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**IAN MCLEAN**
Deputy Attorney General
Indianapolis, Indiana



# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| DAVID PAUL BURNS, | ) | |
| | ) | |
| Appellant-Defendant, | ) | |
| | ) | |
| vs. | ) | No. 45A03-1108-CR-364 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Plaintiff. | ) | |

APPEAL FROM THE LAKE SUPERIOR COURT
The Honorable Clarence D. Murray, Judge
Cause No. 45G02-1005-FC-57

**April 12, 2012**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**NAJAM, Judge**

## STATEMENT OF THE CASE

David Paul Burns appeals his conviction for theft, as a Class D felony, and his adjudication as an habitual offender following a jury trial. He presents two issues for our review:

1. Whether he was placed in a position of grave peril after a witness testified about having been threatened by Burns.

2. Whether his sentence is inappropriate in light of the nature of the offense or his character.

We affirm.

## FACTS AND PROCEDURAL HISTORY

During the late night of May 13 or early morning of May 14, 2010, Burns and two friends, Larry Potts and Chris Jordan, went to the business premises of Derek Bremer, cut down a security fence, and stole a wood-splitter. The trio intended to sell the wood-splitter to a third party. Bremer reported the theft, and police, assisted by a canine unit, tracked the thieves and found the wood-splitter at Jordan's residence, only a short distance from Bremer's property. Jordan initially told police that Burns and Potts had stolen the wood-splitter, but he eventually admitted that he had also been involved in the theft.

The State charged Burns, Jordan, and Potts with burglary and theft. And the State alleged that Burns was an habitual offender. As part of their plea agreements, Jordan and Potts agreed to testify against Burns at his trial. A jury found Burns guilty of theft, as a Class D felony, and acquitted him on the burglary charge. The jury also adjudicated Burns an habitual offender. The trial court entered judgment accordingly and sentenced

2

Burns to three years, enhanced by four years, for a total sentence of seven years. This appeal ensued.

## DISCUSSION AND DECISION

### Issue One: Fundamental Error

Burns first contends that "the State intentionally plunged an evidentiary harpoon into Burns consisting of hearsay and an uncharged bad act." Brief of Appellant at 5. In particular, Burns claims that the prosecutor deliberately questioned Jordan about Burns' alleged threat to harm Jordan and that that testimony placed him in a position of grave peril. We cannot agree.

The following colloquy on direct examination of Jordan includes the alleged misconduct:

Q:      All right. So, you give a statement in the morning, a statement in the afternoon where you give them more information. At some point are you released from the jail?

A:      Yeah.

Q:      Do you ever go back in to give another statement?

A:      Yeah, after they let me out and the detective says, well, I'm going to let your papers run out and you will be out in forty-eight hours, but then you're going to have a warrant in a week or two. And then I got out and then I heard from friends of mine that, saying that they spoke to [Burns] saying that [Burns] said that. . . .

DEFENSE COUNSEL:      Objection, Your Honor. He's testifying as to hearsay.

PROSECUTOR:      That's fine.

COURT:      Sustained.

A:      . . . that a . . .

3

Q:  No, you can't answer that. I'm going to ask you another question. Did you go back after you were released and talked to Detective Bridgeman?

A:  Yes.

Q:  Why did you go back to talk to him?

A:  Because [Burns] threatened to hurt me, I heard, so I went back and made a statement.

Q:  So, you make a statement about that, you eventually get picked up on that warrant that was put out for you?

A:  Yes.

Transcript at 281-82.

An evidentiary harpoon involves the deliberate use of improper evidence to prejudice the defendant in the eyes of the jury. Lucio v. State, 907 N.E.2d 1008, 1010 n.2 (Ind. 2009). To prevail on such a claim of error, the defendant must show that: (1) the prosecution acted deliberately to prejudice the jury; and (2) the evidence was inadmissible. Kirby v. State, 774 N.E.2d 523, 535 (Ind. Ct. App. 2002). Here, while Burns maintains that the prosecutor intentionally provoked Jordan to testify about the threat allegedly made by Burns, he has not shown any such intent. Nothing in the record supports Burns' contention on this issue. Indeed, after Jordan initially began to give the hearsay testimony and defense counsel objected, the prosecutor agreed, and the trial court sustained the objection. And when Jordan appeared to continue to testify to the hearsay, the prosecutor stated, "No, you can't answer that." Transcript at 282. Burns has not sustained his burden to show that this testimony was an evidentiary harpoon wielded by the State.

4

Still, Burns contends that the testimony violated Evidence Rule 404(b), which prohibits evidence of prior, uncharged bad acts. Because Burns did not object to the testimony, he avers on appeal that the testimony constituted fundamental error. To constitute fundamental error, the error must constitute a blatant violation of basic principles, the harm or potential for harm must be substantial, and the resulting error must deny the defendant fundamental due process. Brown v. State, 799 N.E.2d 1064, 1067 (Ind. 2003) (quotation omitted). It must be so prejudicial to the rights of a defendant as to make a fair trial impossible. Id. (quotation omitted).

Indiana Evidence Rule 404(b) limits the admission of prior bad acts into evidence and reads in relevant part: "Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." Evidence is excluded under Rule 404(b) only when it is introduced to prove the "forbidden inference" of demonstrating the defendant's propensity to commit the charged crime. Pavey v. State, 764 N.E.2d 692, 704 (Ind. Ct. App. 2002) (citing Sanders v. State, 724 N.E.2d 1127, 1130-31 (Ind. Ct. App. 2000)), trans. denied. However, "[a]s a general rule, the erroneous admission of evidence of extrinsic acts is not fundamental error." Williams v. State, 634 N.E.2d 849, 854 (Ind. Ct. App. 1994). "In determining whether error in the introduction of evidence affected an appellant's substantial rights, we assess the probable impact of the evidence on the jury." Oldham v. State, 779 N.E.2d 1162, 1170 (Ind. Ct. App. 2002), trans. denied.

5

Here, assuming arguendo that the testimony regarding Burns' threat against Jordan impermissibly demonstrated Burns' propensity to commit the crimes for which he was charged, that alone does not constitute fundamental error. Rather, for the error to be fundamental, it must be "blatant." Brown, 799 N.E.2d at 1067. But the single reference to the threat was, at most, harmless to Burns. There was no additional reference to the threat during the remainder of the trial, either by the witnesses or the State. We assess the probable impact of a claimed error in light of all the evidence. See Ind. Appellate Rule 66(A). And Jordan's remark is fairly innocuous when compared to the weight of the evidence against Burns. Thus, we must conclude that the admission of the testimony regarding Burns' alleged bad act had a minimal impact on the jury, did not deny Burns fundamental due process, and, therefore, was not fundamental error. See Manuel v. State, 793 N.E.2d 1215, 1219 (Ind. Ct. App. 2003), trans. denied.

**Issue Two: Sentence**

Burns argues that his seven-year sentence is inappropriate. Although a trial court may have acted within its lawful discretion in determining a sentence, Article VII, Sections 4 and 6 of the Indiana Constitution "authorize[] independent appellate review and revision of a sentence imposed by the trial court." Roush v. State, 875 N.E.2d 801, 812 (Ind. Ct. App. 2007) (alteration original). This appellate authority is implemented through Indiana Appellate Rule 7(B). Id. Revision of a sentence under Appellate Rule 7(B) requires the appellant to demonstrate that his sentence is inappropriate in light of the nature of his offense and her character. See Ind. Appellate Rule 7(B); Rutherford v. State, 866 N.E.2d 867, 873 (Ind. Ct. App. 2007). We assess the trial court's recognition or non-recognition of aggravators and mitigators as an initial guide to determining

6

whether the sentence imposed was inappropriate. Gibson v. State, 856 N.E.2d 142, 147 (Ind. Ct. App. 2006). However, "a defendant must persuade the appellate court that his or her sentence has met th[e] inappropriateness standard of review." Roush, 875 N.E.2d at 812 (alteration original).

Moreover, "sentencing is principally a discretionary function in which the trial court's judgment should receive considerable deference." Cardwell v. State, 895 N.E.2d 1219, 1222 (Ind. 2008). Indiana's flexible sentencing scheme allows trial courts to tailor an appropriate sentence to the circumstances presented. See id. at 1224. The principal role of appellate review is to attempt to "leaven the outliers." Id. at 1225. Whether we regard a sentence as inappropriate at the end of the day turns on "our sense of the culpability of the defendant, the severity of the crime, the damage done to others, and myriad other facts that come to light in a given case." Id. at 1224.

The trial court identified two aggravators[1] and no mitigators and sentenced Burns to three years, the maximum sentence for a Class D felony, enhanced by four years for being an habitual offender. Burns first contends that his sentence is inappropriate in light of the nature of the offense. In particular, Burns maintains that because no one was hurt or threatened with harm during the commission of the theft, and because the stolen property was quickly recovered, an enhanced sentence is inappropriate. But, as the State points out, Burns coordinated with his friends and planned to commit the offense for the purpose of selling the wood-splitter to a third party. In the process, Burns and his cohorts

---

[1] The trial court identified Burns' criminal history and the fact that he was on parole at the time of the instant offense as aggravators.

dismantled a security fence surrounding Bremer's property. We cannot say that Burns' sentence is inappropriate in light of the nature of the offense.

Moreover, Burns cannot show that his sentence is inappropriate in light of his character. While Burns tries to minimize the severity of his criminal history, by the age of twenty-six, Burns had already accumulated four felony convictions, including a B felony dealing in cocaine conviction and a D felony pointing a firearm conviction; four misdemeanor convictions; and three juvenile adjudications, including criminal mischief and auto theft. Burns violated his probation in 2004; he was expelled from a work-release program in 2006; and, most notably, he was on parole when he committed the instant offense in 2010.

Still, Burns contends that he is not the "worst offender." Brief of Appellant at 10. But, while "the maximum possible sentences are generally most appropriate for the worst offenders," our supreme court has clarified:

> This is not, however, a guideline to determine whether a worse offender could be imagined. Despite the nature of any particular offense and offender, it will always be possible to identify or hypothesize a significantly more despicable scenario. Although maximum sentences are ordinarily appropriate for the worst offenders, we refer generally to the class of offenses and offenders that warrant the maximum punishment. But such class encompasses a considerable variety of offenses and offenders.

Ritchie v. State, 875 N.E.2d 706, 725 (Ind. 2007) (emphasis original, citations omitted). We cannot say on this record that Burns' three-year sentence, enhanced by four years for being an habitual offender, is inappropriate in light of the nature of the offense or his character.

Affirmed.

RILEY, J., and DARDEN, J., concur.

8