## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Jan 31 2020, 8:06 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Timothy J. O'Connor
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Lauren A. Jacobsen
Deputy Attorney General
Indianapolis, Indiana

## IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Michael Brandon Swafford,<br>*Appellant-Defendant,*<br><br>v.<br><br>State of Indiana,<br>*Appellee-Plaintiff.* | January 31, 2020<br><br>Court of Appeals Case No.<br>19A-CR-724<br><br>Appeal from the Marion Superior Court<br><br>The Honorable Lisa F. Borges, Judge<br><br>Trial Court Cause No.<br>49G04-1603-F1-9391 |

**Altice, Judge.**

## Case Summary

[1] Michael Swafford appeals his convictions for attempted murder, a Level 1 felony, and resisting law enforcement, a Level 6 felony, claiming that the trial court erred in denying his motion for a mistrial.

[2] We affirm.

# Facts and Procedural History

[3] At approximately 4:00 a.m. on March 8, 2016, IMPD officer Christopher Maher was interviewing Chuck Yowler in a southside neighborhood regarding the whereabouts of a suspected car thief. At some point, a blue Chevrolet Cavalier approached the area. The driver of the vehicle, later identified as Swafford, advanced toward Officer Maher's police car, shined his bright lights, and remained stopped for a few seconds. Officer Maher activated his police cruiser's rotating red and blue lights with the intention of encouraging Swafford to "move on." *Transcript Vol. II* at 25. Swafford, however, continued to slowly approach Officer Maher without dimming his lights.

[4] Officer Maher told Yowler that he needed to leave so he could conduct a traffic stop based on Swafford's failure to dim his bright lights.[1] Officer Maher made a U-turn and parked on the street. Once Swafford passed him, Officer Maher began following the vehicle. Swafford ran a stop sign, and a chase ensued. Swafford ran at least three stop lights. Officer Maher radioed the Cavalier's license plate to the police dispatcher and learned that the vehicle was registered to Nicole Salinas, who was the mother of one of Swafford's children.

[5] Swafford eventually slowed down to nearly five miles per hour and pointed a rifle at Officer Maher's vehicle. Swafford fired several rounds at Officer Mayer, shattering a window and penetrating the police car's windshield. Officer Maher was hit in the chest with shards of glass. As the chase continued, Swafford fired several more rounds at Officer Maher, shattering the back window of the police cruiser. Officer Maher returned fire, but his handgun eventually jammed. Swafford then accelerated and drove away. Officer Maher lost sight of the Cavalier and terminated the chase. A subsequent investigation revealed that one 7.62 mm shell headstamped "TulAmmo 7.62 x 39" was located approximately 600 feet from shell casings that had come from Officer Maher's handgun. *Transcript Vol. II* at 143, 156.

---

[1] Ind. Code § 9-21-8-51 provides that "[a] person who operates a vehicle and fails to dim bright or blinding lights when meeting another vehicle . . . commits a class B infraction."

[6] Near the time of the chase, Swafford telephoned Salinas and told her to report the car stolen. At some point, Salinas called the police and left a message to that effect. IMPD Sergeant Jeffrey Augustinovicz and other officers conducted surveillance on Salinas's residence. When Salinas returned to her apartment around noon, the officers obtained her consent to search the residence. The search revealed a .50 caliber gun box containing empty shell casings and live rounds, some mail from Swafford to Salinas bearing a Department of Correction return address, and a photo of Swafford and his daughter.

[7] During the evening of March 8, Swafford contacted a friend, Brian Gearlds, and the two dropped off the Cavalier at an abandoned apartment complex near 38th street. Swafford told Gearlds that he had been in a shootout with the police and needed "to get rid of this car." *Transcript Vol. III* at 31. Swafford set the car on fire, fled the area, and IMPD officers were subsequently dispatched to the scene. After the fire was extinguished, the officers recovered several spent 7.62 mm shell casings in the back seat of the Cavalier. All but one of the casings had the same "TulAmmo" headstamp as that found on the street where Swafford had shot at Officer Maher. *Transcript Vol. II* at 43, 56, 239-42.

[8] On March 18, 2016, Officer Erik Forestal made a "deal" with Gearlds to assist the police in apprehending Swafford. *Transcript Vol. III* at 70, 77. Gearlds agreed to help, and pursuant to a plan arranged with police, he picked up Swafford on March 20th and drove him to a Speedway gas station. Swafford was carrying a handgun and a duffle bag when he got into Gearlds's vehicle. The police arrested Swafford at the Speedway, and during a search incident to

arrest, the officers seized a .50 caliber handgun from Swafford's waistband. The officers also recovered the rifle that Swafford fired at Officer Maher during the March 8 police chase, along with a 75-round drum magazine, and unspent rounds of ammunition from the duffle bag. Forty-one of the unfired casings were stamped with "TulAmmo 7.62 x 39." *Id.* at 98.

[9] The State charged Swafford with attempted murder, a Level 1 felony, and resisting law enforcement, a Level 6 felony. Swafford was also alleged to be an habitual offender. During a two-day jury trial that commenced on December 17, 2018, twenty-four witnesses testified for the State. At some point during the trial, the State questioned Sergeant Augustinovicz about the items that were seized during the search of Salinas's apartment. In response, Sergeant Augustinovicz testified about some mail found in a back bedroom that was addressed to "Ms. Salinas from [Swafford] *when he was incarcerated earlier.*" *Transcript Vol. II* at 204 (emphasis added). The prosecutor immediately interjected and directed Sergeant Augustinovicz to "stop." *Id.* He then requested the trial court to admonish the jury to disregard Sergeant Augustinovicz's statement and to have it stricken from the record. The trial court granted the motion to strike and admonished the jury to "act as if you never heard the question or answer. You may not refer to it or discuss it in any way during any of your discussions or during deliberations." *Id.* at 205. At a hearing outside the jury's presence, Swafford's counsel addressed the trial court as follows:

> Judge, at this time, based upon the statement that was made by Officer Augustinovicz, I have no choice but to move for a mistrial. . . . And it's based upon the evidentiary harpoon that has been created by his—*and I don't think it was intentional at all.* But I think it did come out in the flow of his answer. It was—it was loud and clear to me. Caught me so off guard that I was shocked and surprised by it. . . . And again, that's an evidentiary harpoon that we can't recover from. No admonishment is going to assist us in recovering from that harpoon. And I just think it was loud and clear.

*Id.* at 207 (emphasis added). The trial court denied Swafford's motion for a mistrial, finding that "the testimony that came in was the word incarcerated, which was really not responsive to the State's question," and "the State did not elicit that information." *Id.* at 209.

[10] Swafford was found guilty as charged and determined to be an habitual offender. Thereafter, on March 6, 2019, Swafford was sentenced to a total of fifty-five years of incarceration. He now appeals.

## Discussion and Decision

[11] A mistrial is an extreme remedy that should be used only when no other curative measure will rectify the situation. *Moore v. State*, 652 N.E.2d 53, 57 (Ind. 1995). In reviewing the denial of a motion for a mistrial, the defendant must demonstrate that the conduct complained of was both in error and had a probable persuasive effect on the jury's decision. *Pierce v. State*, 761 N.E.2d 821, 825 (Ind. 2002). More specifically, the appellant must establish that the questioned conduct was so prejudicial and inflammatory that he was placed in a

position of grave peril to which he should not have been subjected. *Gregory v. State*, 540 N.E.2d 585, 589 (Ind. 1989). The gravity of the peril is measured by the conduct's probable persuasive effect on the jury, not the degree of impropriety of the conduct. *Id.* A trial judge's discretion in determining whether to grant a mistrial is afforded great deference, because the trial judge is in the best position to gauge the surrounding circumstances of an event and its impact on the jury. *Mickens v. State*, 742 N.E.2d 927, 929 (Ind. 2001).

[12] In certain circumstances, the injection of an evidentiary harpoon may constitute prosecutorial misconduct requiring a mistrial. *Roberts v. State*, 712 N.E.2d 23, 34 (Ind. Ct. App. 1999), *trans. denied.* An evidentiary harpoon is the placing of inadmissible evidence before the jury with the deliberate purpose of prejudicing the jurors against the defendant. *Kirby v. State,* 774 N.E.2d 523, 535 (Ind. Ct. App. 2002), *trans. denied.* To prevail on such a claim, the defendant must show that the prosecution acted deliberately to prejudice the jury and that the evidence was inadmissible. *Id.* A defendant need not prove that he would have been acquitted but for the harpooning. *Jewell v. State*, 672 N.E.2d 417, 424 (Ind. Ct. App. 1996), *trans. denied.* However, when the jury's determination is supported by independent evidence of guilt and it was likely that the evidentiary harpoon did not play a part in the defendant's conviction, the error is harmless. *Perez v. State,* 728 N.E.2d 234, 237 (Ind. Ct. App. 2000), *trans. denied.*

[13] In this case, Swafford asserts that a mistrial should have been granted because Sergeant Augustinovicz remarked during his testimony that Swafford had been previously incarcerated. This comment, claims Swafford, amounted to a

prejudicial evidentiary harpoon because an inference arose that "Swafford is a bad character who was more likely to be guilty of the charged offenses," and that inference could not be cured by an admonishment. *Appellant's Brief* at 9.

[14] First, we note that Swafford's trial counsel conceded that the State did not deliberately seek to have that prejudicial statement introduced into evidence. Moreover, immediately after Sergeant Augustinovicz made the comment, the *State* stopped the questioning and requested an admonishment.

[15] In our view, there was no evidentiary harpoon in this instance that warranted a mistrial, as we cannot say that there was any deliberate act by the State with the intent to prejudice the jury against Swafford. That said, the admonishment that the trial court gave following Sergeant Augustinovicz's testimony was presumed to correct any error. *See Ramsey v. State*, 853 N.E.2d 491, 500 (Ind. Ct. App. 2006) (holding that an admonishment to ignore a detective's comment about the defendant's possible involvement in a federal drug conspiracy was presumed to correct any error, and a mistrial was not warranted), *trans. denied.*

[16] Nonetheless, Swafford claims that a mistrial was warranted because Sergeant Augustinovicz, a twenty-one-year veteran police officer, should have known better than to testify about a defendant's prior incarceration. In support of that contention, Swafford directs us to several cases where law enforcement officers were found to be the source of an evidentiary harpoon. *See*, *e.g., Baker v. State,* 506 N.E.2d 817, 818 (Ind. 1987) (observing that a police officer's testimony that the defendant had been offered a polygraph examination could not be presumed

harmless or inadvertent in the absence of any corroborating evidence to support the victim's testimony in a prosecution for child molesting); *Perez,* 728 N.E.2d at 237 (concluding that a police officer's unsolicited statement on direct examination that he was told by another officer that the defendant was a convicted felon was an evidentiary harpoon, yet the error was harmless because the jury's determination of guilt was supported by independent evidence and the evidentiary harpoon likely did not play a role in the conviction); *Houchen v. State*, 632 N.E.2d 791, 794 (Ind. Ct. App. 1994) (holding that the trial court erred in denying the defendant's motion for a mistrial and warranted reversal in a child molesting prosecution where a detective *twice* deliberately volunteered at trial that the defendant had been offered a polygraph examination, and it was established that the defendant "could not have been convicted without [the detective's] testimony," in light of the four-year-old victim's confusing and equivocal testimony).

[17] In each of the cases cited above, it was readily apparent that the inadmissible evidence was intentionally placed before the jury to prejudice the defendant. We cannot say the same here. Sergeant Augustinovicz reviewed his notes relating to the search of the apartment to refresh his recollection just prior to responding to the State's question. He did not testify that Swafford had been previously convicted of a crime, did not describe Swafford as a felon, or make a statement that would have placed Swafford in grave peril. Rather, the comment was in reference to a piece of mail that he and other police officers

discovered during the search that connected Swafford to Salinas's residence, and to the vehicle that was involved in the police chase and shooting.

[18] Finally, we note that the independent evidence the State presented at trial, including the lengthy testimony presented by numerous witnesses, established Swafford's guilt in the charged offenses. Specifically, the State demonstrated that Swafford had been in possession of the Cavalier since November 2015. His ongoing use of that vehicle was confirmed by several witnesses, and it was established that at some point during the March 8 episode, Swafford urged Salinas to report the vehicle stolen. Swafford and Gearlds abandoned the vehicle and set it on fire later that evening, and the police recovered the Cavalier where the two men had abandoned it.

[19] The evidence further established that the rifle recovered from Swafford's duffle bag was the one used in the shooting. The forty-five rounds of ammunition found in the bag and those seized from the back seat of the Cavalier were of the same brand and type that were recovered from the scene of the shooting.

[20] We cannot say that Sergeant Augustinovicz's isolated comment played a role in the conviction and amounted to a prejudicial evidentiary harpoon that warranted a mistrial, When considering the independent evidence that the State presented to support Swafford's guilt, any alleged error that may have resulted from Detective Augustinovicz's testimony was harmless. For these reasons, we conclude that the trial court properly denied Swafford's motion for a mistrial.

[21] Judgment affirmed.

Robb, J. and Bradford, C.J., concur.